**UNITED STATES of America**
v.
**Bernard F. KENNY, Appellant.**
**No. 11767.**

United States Court of Appeals
Third Circuit.

Argued April 16, 1956.

Decided July 10, 1956.

Writ of Certiorari Denied Nov. 5, 1956.

See 77 S.Ct. 133.

Martin D. Moroney, Newark, N. J. (Maurice C. Brigadier, Seymour Margulies, Jersey City, N. J., on the brief), for appellant.

Pierre P. Garven, Asst. U. S. Atty., Newark, N. J. (Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., George J. Rossi, Asst. U. S. Atty., Jersey City, N. J., on the brief), for the United States.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Appellant, Bernard F. Kenny, the executive officer of a New Jersey municipal housing and redevelopment agency has been convicted of violating Section 1001 of Title 18 of the United States Code in that he willfully and by artifice concealed the material fact of his private interest in certain government contracts, this being done in a matter within the jurisdiction of the Housing and Home Finance Agency. Section 1001, under which both this and a relevant companion indictment against Kenny were drawn, provides as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000

or imprisoned not more than five years, or both."

The present indictment, No. 273–54, named Kenny as sole defendant and charged that in a matter within the jurisdiction of the Housing and Home Finance Agency, defendant willfully and unlawfully concealed the fact that he, while serving as executive director of the Jersey City Redevelopment Authority, had a private interest in two certain contracts, dated July 2, 1951, between the Authority and the architectural firm of Mascolo and Masumian, through a secret relationship of undisclosed partner in the said firm.

A companion indictment, No. 274–54, charged that Kenny, Mascolo, Masumian and Comparetto, as partners in the firm of Mascolo and Masumian, did, in a matter within the jurisdiction of the Housing and Home Finance Agency, knowingly, willfully and unlawfully on four separate occasions between October 5, 1951 and January 15, 1952, make false material statements in affidavits supporting certain vouchers submitted by the firm as claims for services rendered under the above mentioned contracts. In each affidavit one of the partners stated on behalf of the firm that no employee of the local agency had any interest, direct or indirect, in the claims presented, whereas it is alleged the defendants well knew the statements to be false in that they knew Bernard F. Kenny was an employee of the local agency and had an interest in the claims.

The two indictments were tried together. The jury acquitted all defendants of the charge in No. 274–54, but could not reach an agreement on No. 273–54. A second trial on the latter indictment resulted in a jury verdict of guilty. Judgment was entered thereon and this appeal followed.

Appellant first urges that the alleged wrongdoing did not occur in a "matter within the jurisdiction of any department or agency of the United States", within the meaning of Section 1001 of Title 18. He points out that the Housing and Home Finance Agency merely

loaned money to the municipal agency and that, thereafter, it was his interest in a municipal rather than a federal contract which he is said to have concealed. But the Housing and Home Finance Agency was intimately connected with and substantively interested in the contracting by the local agency. On behalf of the United States it had advanced the entire sum required to finance the project planning of which these contracts were a part. And after this planning should be completed the federal government would be committed to the making of grants to cover two-thirds of the entire cost of the project. Moreover, in advancing funds for planning, Housing and Home Finance Agency required that all contracts proposed by the local agency for services and materials be cleared by it.

■ More directly bearing on the wrongdoing here charged, the loan contract contained the following provision:

"\* \* \* nor shall any such member or other officer, agent, servant or employee of the Local Private Agency have any private interest, direct or indirect in any contract for property, materials, supplies, equipment or services to be acquired by the Local Public Agency in the undertaking of the Surveying and Planning work; \* \*."

This contractual requirement was a legitimate method of vindicating the interest of the federal agency in the integrity of transactions it was financing. Any failure to respect this obligation was certainly a matter within the jurisdiction of the federal agency. Thus, Kenny acted in a context covered by Section 1001 of Title 18. Cf. Nye and Nissen v. United States, 9 Cir., 1948, 168 F.2d 846; affirmed 1949, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; United States v. Ganz, D.C.Mass.1942, 48 F. Supp. 323.

■ Appellant's next contention is that his acquittal on the trial of indictment No. 274–54 is a complete bar to further proceedings on indictment No. 273–54. The parties are not in dispute as to the controlling principle of res judicata in criminal cases. Where the state charges an accused with two related offenses, an acquittal of one precludes subsequent prosecution on the other, if that acquittal was the result of decision in favor of the defendant on an issue which would be essential to the case against him on the second charge. Sealfon v. United States, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180; cf. United States v. Simon, 3 Cir., 1955, 225 F.2d 260.

■ It was essential to conviction in the present case that the government prove that Kenny was a partner financially interested in the contracts of Mascolo and Masumian with the municipal agency. That is conceded. However, to make his res judicata point, Kenny must also show that a contrary finding on that same issue of fact was made by the jury which acquitted him of the first charge. This we think he has failed to establish.

The evidence on the first trial of the two indictments showed that a partner other than Kenny signed the vouchers which contained a false representation and were the subject matter of indictment No. 274–54. Therefore, beyond proof of Kenny's partnership interest, the prosecution had to establish that the affidavits were executed with requisite criminal intent by the signer and guilty knowledge and acquiescence by his business associates. Indeed, the court cautioned and instructed the jury to "bear in mind that \* \* \* the false statements must have been a knowing and willful false statement instead of a mere negligent one". Thus instructed, the jury may have believed that the person who signed these vouchers on behalf of the firm acted heedlessly and that neither he nor his associates in submitting these vouchers had the requisite intention of misrepresenting Kenny's relation to the firm. This seems to be the plausible and probable explanation of the jury's action in acquitting all defendants under indictment No. 274–54,

yet failing to reach an agreement on indictment No. 273–54. We must recognize that the jury may quite consistently have concluded that criminal intent had not been proved in one case, while disagreeing on the issue of partnership status in the other case. Therefore, we cannot accept appellant's supposition that the jurors acquitted him of making a false affidavit on the theory that he was not a partner.

■ ■ We come now to appellant's point that the evidence was insufficient to warrant a conviction. As to this, we state merely that our study of the record has led us to the contrary conclusion. However, one legal point deserves mention here. At the conclusion of the government's case the defendant moved for dismissal on the ground that the showing made by the prosecution was insufficient to sustain a conviction. A similar motion was made at the conclusion of the entire case. Both motions were denied. On this appeal it is argued that we should consider only the sufficiency of the government's case in chief, that we should not consider any evidence helpful to the prosecution which the defense may have adduced. Such is said to be the New Jersey rule. State v. Fox, 1951, 12 N.J.Super. 132, 79 A.2d 76. However, the federal rule is to the contrary. By introducing evidence in his own behalf, defendant takes the risk of completing a case against himself. The adequacy of the government's case in chief standing alone is no longer in issue. Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, certiorari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662; United States v. Thayer, 7 Cir., 1954, 209 F.2d 534.

■ Next, appellant complains that after he took the witness stand in his own defense the court permitted the prosecutor to cross-examine him with reference to his dealings with the firm of Mascolo and Masumian in 1952, after the period covered by the indictment. Admittedly, the indictment was based on transactions in 1951. On direct examination the defendant had testified that he resigned from the partnership in May, 1950. On cross-examination he was questioned, over objection, about certain weekly cash payments made to him by the several members of the firm in 1952. This inquiry about occurrences subsequent to the period covered by the indictment is now assigned as prejudicial error and abuse of discretion as to the scope of cross-examination. But the testimony of the witness on direct examination had been to the effect that he had no interest in business conducted by the firm after May, 1950. Certainly it is a proper method of testing the accuracy of that assertion and the credibility of the witness to ask him on cross-examination about money received from members of the firm some two years later. He did offer an exculpatory explanation that these payments related to something other than a sharing of firm profits. But that did not affect the propriety of asking about conduct which, unexplained, seemed inconsistent with the testimony of the witness on direct examination.

Finally, several instructions which were part of the court's charge to the jury are also challenged on this appeal. We have examined each such instruction and find no basis for reversal. Only two particular observations need be added. The charge as to the proper evaluation of the testimony of a witness who has testified falsely in one particular was consistent with the view expressed by this court in United States v. Rutkin, 1951, 189 F.2d 431, affirmed 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833. The instruction given on the evaluation of evidence of good reputation followed our ruling in United States v. Claypoole, 3 Cir., 1955, 227 F.2d 752.

On the whole record we have concluded that this conviction was justified by the evidence as presented in a fair trial conducted without reversible error.

The judgment will be affirmed.