### STATE of Maine

#### v.

### James C. SULLIVAN.

Supreme Judicial Court of Maine.

March 13, 1980.

---

Michael E. Saucier (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Francis J. Hallissey, Machias (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

After a trial, jury-waived, the presiding Justice in the Superior Court (Washington County) found defendant James C. Sullivan guilty of violating 17 M.R.S.A. § 1603–A,[1] for having submitted on four separate occasions expense vouchers, in connection with a matter within the jurisdiction of a department or agency of the State of Maine, in which defendant knowingly and willfully made false statements to be reimbursed twice for the expenses of one trip. Defendant has appealed from the judgments of conviction, claiming that (1) there were fatal variances between the facts alleged and the proof at trial; (2) the statute under which he was convicted was inapplicable because one half of the alleged double reimbursement came in connection with a matter which was not "within the jurisdiction of any department or agency of the State . . .", as required by 17 M.R.S.A. § 1603–A; and (3) the evidence was insufficient to support the conviction.

We deny the appeal and affirm the judgments of conviction.

Defendant served as director of the Washington County Bureau of Civil Emergency Preparedness (the County Bureau) and as a member of the board of directors of the Maine Law Enforcement Planning and Assistance Agency (hereinafter LEAA).[2] His duties in these positions required him to travel extensively. He would make the original payment of the expenses incurred in his travels and would subsequently receive reimbursement dollar for dollar paid out by him, except that his expenses for travel were reimbursed in accordance with a mileage allowance fixed by statute.[3]

---

**1.** 17 M.R.S.A. § 1603–A (Supp.1975):
"Whoever, in any matter within the jurisdiction of any department or agency of the State of Maine, knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be punished by a fine of not more than $500, or by imprisonment for not more than 11 months, or by both." (Repealed 1975 c. 499 § 8, eff. May 1, 1976).

**2.** The name of this agency was changed by P.L.1975, c. 425 § 1 to the Criminal Justice Planning and Assistance Agency.

**3.** *See* 5 M.R.S.A. §§ 5, 8 (1979). Though defendant was reimbursed for meals and lodging by several of the vouchers in the instant case, principally at issue is the claim for mileage allowance based on the total number of miles allegedly driven.

To obtain reimbursement defendant submitted vouchers which itemized the individual trips, indicating the number of miles traveled, the amount of reimbursement expected for mileage on each particular trip, and expenses relating to food and lodging, if any. Relative to his work for LEAA, defendant filled out, and submitted, vouchers directly to that agency, either monthly or quarterly. Regarding his duties as director of the County Bureau, defendant wrote out each month a list of his trips and expenses and gave it to his secretary. She typed the vouchers and submitted them for official approval to the Washington County Commissioners, the statutorily designated governing body,[4] and after the County Commissioners approved the expenses, defendant was reimbursed. Every three months, defendant's secretary forwarded to the State Bureau of Civil Emergency Preparedness a copy of defendant's County Bureau vouchers. The State Bureau reviewed each quarter's vouchers to determine whether, under a federal program established to defray operating costs of state and local civil defense organizations, Washington County was eligible to receive reimbursement in the amount of fifty percent of the expenses. Upon a determination of eligibility, the State Bureau would reimburse the County up to 50% of the total amount of the vouchers.

Defendant had a haphazard system of keeping his records. In compiling information for preparation of his monthly or quarterly vouchers, he would collect the random scraps of paper on which he had jotted information pertaining to his travels, such as mileage traveled, dates of the trips, the mileage allowance, and other incidental expenses such as food or lodging.

An audit of defendant's travel expenses revealed over 80 instances in a five year period in which defendant had submitted vouchers for his civil defense and LEAA work, respectively, in such manner that in relation to each project he would receive a *separate* reimbursement in full for expenses incurred on trips stated as having occurred on the same dates and having practically identical itineraries. On the basis of that audit and subsequent investigations, defendant was indicted in September 1977 on four counts alleging that he had submitted vouchers in which knowingly and willfully he made false representations.[5]

The factual allegations of the four counts embodied in the two indictments against defendant are as follows:

1. that he submitted to LEAA an expense voucher claiming mileage allowance for a round trip between Dennysville, Maine, defendant's home, and Natick, Massachusetts during the period from November 17 to November 19, 1974; and that he also submitted to the County Commissioners (which, in turn, would seek reimbursement from the Department of Defense and Veterans' Services) an expense voucher for mileage allowance for a round trip between Dennysville and Augusta on November 18 and 19, 1974;

2. that he submitted to LEAA an expense voucher for mileage allowance for a trip from Dennysville to Augusta on March 10, 1975, and a return trip from Augusta to Dennysville on the following day, March 11, 1975; and that he also submitted to the County Commissioners a voucher for mileage allowance for a round trip between Dennysville and Augusta on March 11, 1975;

3. that he submitted to LEAA an expense voucher for mileage allowance for a trip between Dennysville and Bangor on January 7, 1975 and a return trip, Bangor to Dennysville, on January 9, 1975; and that he also submitted to the

---

4. *See* 37-A M.R.S.A. § 59.

5. The first count of this indictment was dropped. A second indictment returned in March 1978 contained one count alleging essentially this same conduct as a violation of 17 M.R.S.A. § 1603-A. Apparently, the second indictment was brought because the first count of the September 1977 indictment erroneously stated the date on which defendant made the false representation, alleging it as August 23, 1974 rather than December 23, 1974, the date alleged in the second indictment.

County Commissioners a voucher for mileage allowance for a trip between Dennysville and Bangor on January 9, 1975; and

4. that he submitted to LEAA an expense voucher seeking mileage allowance for a trip from Dennysville to Augusta on March 24, 1975 and a return trip, Augusta to Dennysville, the next day, March 25, 1975; and that he also submitted to the County Commissioners a voucher for mileage allowance for a round trip between Dennysville to Augusta, on March 24, 1975.

The Superior Court Justice found that defendant had submitted vouchers for "unauthorized *duplicate* reimbursement", and that this conduct constituted "fraudulent double-billing." (emphasis in original). The Justice further concluded that defendant's submissions of vouchers for his work as director of the County Bureau was "in . . . [a] matter within the jurisdiction of . . . [an] . . . agency of the State of Maine", within the meaning of Section 1603–A, basically because the State Bureau of Civil Emergency Preparedness administered the program through which Washington County received 50% reimbursement for payments to defendant for traveling expenses. Accordingly, the Justice found defendant guilty as charged in each of the four counts.

### 1.

As to defendant's first contention, that there were fatal variances in the facts charged against defendant and the purported proof of them at trial, the variances claimed relate to particular mileage totals alleged as well as to the alleged identity of the governmental entity involved.

Since the pattern of each of the four counts against defendant is the same, defendant's contention may be addressed by using one count as the model. For this purpose, we quote the count in the March 1978 indictment:

"That on or about December 23, 1974, in Washington County, State of Maine, JAMES C. SULLIVAN did, in a matter

within the jurisdiction of a department or agency of the State of Maine, knowingly and willfully make a false, fictitious or fraudulent statement or representation in that said defendant did falsely represent, by submitting expense account vouchers to both the Department of Defense and Veterans Affairs and the Maine Law Enforcement Planning and Assistance Agency, that he was entitled to reimbursement for 818 miles of travel expenses for travel incurred on November 17, 18, 19, 1974, when, in fact, he was not entitled to reimbursement for travel expenses in the amount represented on said expense account vouchers."

■ The proof at trial conformed to and, with consistency, added to the factual pattern depicted in the two indictments in relation to the nature of the offense, the time at which it occurred, and the governmental entities involved. Each count stated a total mileage for which defendant claimed reimbursement, and the specific dates on which the mileage was allegedly accumulated. The series of vouchers introduced in evidence showed claims for mileage allowance based upon the same total number of miles traveled on the same dates. Thus, reverting to our model as the example for all the four counts, the allegation is that defendant claimed reimbursement for 818 miles of travel incurred on November 17–19, 1974. This mileage is the total of the mileage stated as to the dates November 17–19, 1974 in the vouchers submitted to LEAA (420 miles) and to the County Commissioners (398 miles), who, in turn, submitted the voucher claiming reimbursement of 398 miles on those dates to the State Bureau of Civil Emergency Preparedness. As to the other three counts, the analysis would be the same.

We therefore reject defendant's contention that there were fatal variances between the proof at trial and the allegations of the mileage involved.

■ Also untenable is defendant's claim that the alleged description of the second State agency as the "Department of De-

fense and Veterans Services" was materially defective. The proof at trial adequately demonstrated that the State Department of Defense and Veterans Services is the department of the State of Maine statutorily responsible [6] for the operation of the State Bureau of Civil Emergency Preparedness, which, in turn, supervises and coordinates the activities of local county and municipal bureaus of civil emergency preparedness. The State Bureau of Civil Emergency Preparedness administered the reimbursement scheme by which the county-level bureaus could obtain the 50% federal defrayment of costs. Thus, the only "variance" here stems from the reference in allegations to that department of the State of Maine which had the ultimate supervision of, and responsibility for, the bureau of which defendant was director and the distribution of the funds to which defendant's conduct related. In the present context this does not generate a fatal variance between allegation and proof in view of the interrelationships shown by the proof and defendant's advance familiarity with the structure of the governmental agencies for which he worked, arising by virtue of the positions he held in numerous State and County organizations. *Cf. State v. Nappi,* Me., 369 A.2d 230 (1977) (use of common rather than technically correct name of property owner held not fatal to indictment's sufficiency); *State v. Kimball,* Me., 359 A.2d 305 (1976) (imprecise designation of property owners held not prejudicial).

2.

Defendant next argues that 17 M.R.S.A. § 1603–A is restricted in applicability to conduct "in any matter within the jurisdiction of any department or agency of the State of Maine", and defendant contends his conduct relative to the County Bureau was not such.

The Superior Court ruled to the contrary, primarily on the basis that the overseeing State agency, the Bureau of Civil Emergency Preparedness, administered federally supplied funds to reimburse the counties, and therefore defendant's submission of the vouchers to the County Commissioners as the initial step to achieve reimbursement from Washington County, was conduct "in . . . [a] matter within the jurisdiction of . . . [a] department or agency of the State . . . ." We agree.

Consistently, parallel language in a nearly identical federal statute has been given a broad, nontechnical meaning, to encompass the variety of deceptive ploys made possible by the increasing complexities of government organization and activity. *United States v. Massey,* 550 F.2d 300 (5th Cir. 1977); *see also Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955); *United States v. Lambert,* 501 F.2d 943 (5th Cir. 1974); *United States v. Kenny,* 236 F.2d 128 (3rd Cir. 1956).

This federal statute, codified at 18 U.S.C. § 1001 (1976), provides as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

In *Friedman v. United States,* 374 F.2d 363 (8th Cir. 1967), the court held that a matter fell within an agency's "jurisdiction" for purposes of this statute if that agency has power to allow a privilege or grant an award, or if that agency has power to enact binding regulatory requirements and determine the extent to which an individual comes thereunder. In other words, an agency exercising some positive power with respect to some matter has, for the purposes of this statute, "jurisdiction" over that matter.

6. *See* 37–A M.R.S.A. § 51 (1978).

Further, in *United States v. Kenny, supra,* the court held that an executive officer of a *state* housing and redevelopment authority could be properly convicted under the *federal* statute (18 U.S.C. § 1001) for concealing a private interest in two contracts between that *state* authority and a private architectural firm. The "matter" of concealment fell within the jurisdiction of the *federal* Housing and Home Finance Agency because the federal agency advanced money required to plan and execute the project, and possessed authority to approve of the subject contracts. Also, a clause in the contract specifically forbidding such conduct was held to manifest a purpose to protect the integrity of the federal government. *See Ogden v. United States,* 303 F.2d 724 (9th Cir. 1962); *Friedman v. United States, supra.*

■ With such basic attitudes in mind, we conclude that the organizational structure of civil defense in Maine is such that defendant's voucher submissions for his travel as director of the County Bureau were "in . . . [a] matter within the jurisdiction of . . . [a] department or agency of the State . . . ."

. The statutory provisions show a hierarchy by which authority and control proceed from the State Department of Defense and Veterans' Services through the Director of the State Bureau of Civil Emergency Preparedness to the more local subdivisions. 37–A M.R.S.A. §§ 1, 51–62. What emerges is a civil defense structure comprised of various levels with varying degrees of autonomy and responsibility, all ultimately falling under the aegis of the State Bureau of Civil Emergency Preparedness and the Department of Defense and Veterans' Services.

The interrelationship between the state and county bureaus is particularly clear with respect to the billing procedure and the 50% reimbursement system for traveling paid by federal funds. According to the testimony of Scott Johnson, Administrative Officer of the State Bureau of Civil Emergency Preparedness, the State of Maine receives a grant of federal funds to defray operating expenses of the civil defense system. These funds are set aside in a separate account. A portion of the funds is specifically earmarked to reimburse 50% of the county's expenses. Individual county bureaus submit to the State office vouchers indicating itemized travel expenses for eligible employees, usually the director of the local bureau. The State Bureau reviews the submitted vouchers and, after a determination of eligibility, reimburses the county up to 50%. Thus, the State Bureau of Civil Emergency Preparedness administers the program by which the local county and municipal bureaus receive up to 50% reimbursement for their expenditures.

Defendant's correspondence with the State director of the Bureau of Civil Emergency Preparedness confirms its supervision and control. In a letter posted July 7, 1976, defendant attempted to account for his claimed travel expenses on certain dates and to clarify his method of time-keeping. With regard to accounting for billable travel expenses, the letter says: "this [method] is the way I was told to do it by your office."

We conclude, therefore, that in the circumstances of this case the Justice of the Superior Court correctly decided that, within the meaning of the statute under consideration, defendant's submissions of vouchers for his travel as director of the County Bureau was "in . . . [a] matter within the jurisdiction of . . . [a] department or agency of the State of Maine."

### 3.

Defendant's last contention on appeal is that the evidence was insufficient to establish essential elements of the offense, primarily the falsity of the voucher entries and defendant's knowledge that such entries were false. Defendant contends that with the exception of the conflict between the trips recorded on vouchers for both agencies regarding travel during the period of November 17–19, 1974 (Count I), it was *physically possible* that he in fact made, as separate trips, each trip described in the vouchers submitted to the LEAA and to the

County Commissioners, respectively, and that the State failed to prove otherwise. In support of this latter contention, defendant further argues that even if, viewed as to their *combined* effect, the voucher entries presented a false account, the State failed to prove that defendant made such false representation knowingly and willfully.

### A.

With regard to the falsity of the voucher entries, the Superior Court found that defendant had submitted vouchers for "unauthorized *duplicate* reimbursement" and that such representations were "fraudulent, regardless of the truth of the individual claims." The meaning of this conclusion is elucidated by the specific findings made by the court on the record immediately after the close of the trial. The court found specifically that defendant had "intentionally double-billed"—i. e., that defendant had submitted to two separate agencies individual vouchers requesting each to reimburse for the *total* amount of expenses incurred on a single trip. Thus, the Superior Court found the "falsity" of defendant's "representations", within the meaning of Section 1603–A, to be constituted by defendant's representing to *each* agency that the *full* expense of traveling had been incurred in the conduct of *that* agency's business.

We conclude that this finding of "falsity" is supported by the evidence, more particularly because it is not the prosecution's burden to remove *any* doubt arising in light of what may be physically possible but only such doubt as to a rational juror would be a *reasonable* doubt. *See United States v. Anderson*, 579 F.2d 455 (8th Cir. 1978) (decided under the parallel federal statute).

With respect to the count in the March, 1978 indictment, which concerned the billing for trips between Dennysville, Maine and Natick, Massachusetts over the period from November 17 to November 19, 1974, and between Dennsyville and Augusta on November 18 and 19, 1974, the State presented the testimony of Theodore Trott, Executive Director of LEAA, who accompanied defendant on the trip to Natick. Mr. Trott testified that he and defendant had returned from a two day stay in Massachusetts and arrived in Augusta on the evening of November 19, 1974. If the fact-finder believed Mr. Trott's testimony that defendant arrived in Massachusetts on November 17 and stayed in Massachusetts through the 18th, the representations in defendant's voucher that on November 18 he traveled from Dennysville to Augusta could not possibly be true. Also, the acceptance of Mr. Trott's testimony that defendant arrived at Augusta from Massachusetts during the evening of November 19 would make it highly unreasonable, even if physically possible, that defendant continued to travel, that same night, the additional 200 miles from Augusta to Dennysville. The fact-finder would be justified, therefore, in finding these voucher representations false.

Similarly regarding the other three counts, the fact-finder was entitled to reject as unreasonable that defendant in fact made trips involving the mileage shown by the vouchers, taken in combination. For defendant to have traveled the miles thus represented within the times stated would have required virtually incessant driving. Defendant sought to make it appear that such driving was reasonable for him by claiming that he often drove long hours to return home because he wished to be with his wife, who was apparently recuperating from an illness, and because he feared vandalism to their property. However, the fact-finder had ample basis in the evidence for refusing to credit that explanation. The evidence justified a finding that defendant was claiming to have traveled an additional 200 or 400 miles in one day to transact business that he could have attended to earlier on the same day when he had previously been in Bangor or Augusta. Although it was physically possible for this to have happened, the fact-finder could justifiedly take it to be too unreasonable to be believed, more particularly since the evidence showed that defendant had the opportunity, and the authority, to plan his

schedule, and that he did so plan it on occasion to avoid unnecessary driving.

Absent reasonable explanations to be derived from the totality of the evidence presented, the Superior Court was justified in finding that in combination the vouchers made representations of fact which were false.

### B.

■ The remaining question is whether defendant *knowingly and willfully* made these false statements.[7] We find the evidence in this regard sufficient to support the conviction.

Defendant personally prepared the vouchers before either giving them to his secretary to type (the County Bureau vouchers) or submitting them directly to the State (the LEAA vouchers). Defendant personally wrote out the LEAA vouchers on a monthly or quarterly basis. The County Bureau vouchers were prepared monthly. Defendant wrote out by hand, every month, the list of trips with accompanying mileage traveled, the calculated mileage allowance, and other expenses for food or lodging. His secretary then typed the list for submission to the monthly meeting of the County Commissioners, who reviewed and passed approval upon the expenses. Every three months the secretary submitted these expense vouchers to the State Bureau in Augusta.

From these circumstances it is a cogent inference that defendant's involvement in reviewing and recording expenses and dates of his trips, despite the haphazardness of his system of keeping records, must have brought to his attention the frequency of the overlapping of trips on the dates recorded. That this would be so is best illustrated by the timing of defendant's recording of the trips covered by the March 1978 indictment. Defendant returned on November 19, 1974 from his trip for LEAA to Natick, Massachusetts. On December 10, 1974— less than three weeks later—defendant sub-

mitted to the Washington County Commissioners a voucher in which he claimed traveling expenses for a round trip from Augusta to Dennysville on November 18th and 19th; then, thirteen days later defendant submitted his LEAA voucher in which he claimed reimbursement for his Natick, Massachusetts trip covering the same period, November 17th through 19th.

Defendant's knowledge that he was recording overlapping trips and dates on the vouchers is further corroborated by the frequency with which such overlaps occurred. The State introduced at trial an auditor's report containing a listing of defendant's reimbursement claims from both civil defense and LEAA for a five year period dating back to July 1970. In that period over eighty instances occurred where defendant had billed both the County Commissioners and LEAA for substantially the same trips taken on overlapping dates. Although defendant was indicted and convicted as to only four separate instances, the number of other similar overlapping instances shown in the evidence further supports the finding that defendant made the false statements in the vouchers knowingly and willfully.

The entry is:

Appeal denied.

Judgments of conviction affirmed.

POMEROY and GLASSMAN, JJ., did not sit.

---

7. We interpret the Superior Court Justice's characterization of defendant's seeking unauthorized duplicate reimbursement as "fraudulent" to mean only that defendant made "false" statements "knowingly and willfully", thus to violate Section 1603–A.