**UNITED STATES of America, Appellee,**

v.

**James J. CURRAN, Jr., Appellant.**

**No. 93–1444.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 6, 1993.

Decided March 30, 1994.

Sur Petition For Panel Rehearing
June 13, 1994.

Samuel Dash, (argued), Washington, DC, Patrick J. O'Connor, Thomas C. Zielinski, Chris J. Pietrafitta, Cozen and O'Connor, Philadelphia, PA, for appellant James J. Curran, Jr.

William B. Carr, Jr., (argued) Asst. U.S. Atty., Michael L. Levy, Acting U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals Philadelphia, PA, for appellee U.S. of America.

Before: BECKER, NYGAARD, and WEIS, Circuit Judges

## OPINION OF THE COURT

WEIS, Circuit Judge.

This case arose as the result of the defendant's actions in arranging to reimburse individuals for contributions they had made at the defendant's instigation to the campaign funds of candidates for federal offices. Defendant was convicted on charges of causing election campaign treasurers to submit false reports to the Federal Election Commission in violation of 18 U.S.C. §§ 2(b) and 1001, the false statements statute. He was also convicted on a conspiracy charge under 18 U.S.C. § 371 based on the same conduct. We will grant a new trial because the jury charge erroneously defined the defendant's duty to the Commission and failed to adequately explain the intent requirement under 18 U.S.C. §§ 2(b) and 1001. We reject, however, the defendant's contention that the three-year statute of limitations in the Federal Election Campaign Act, 2 U.S.C. § 455(a), applies to the offenses for which defendant was convicted under 18 U.S.C. §§ 2(b), 371, and 1001.

In addition to maintaining an active law practice, defendant James J. Curran, Jr. served as the Chief Executive Officer of the Reading Anthracite Company in Pottsville, Pennsylvania. During the period from September 1984 to October 1987, defendant

asked a number of his employees to write out personal checks payable to the election campaigns of designated candidates for federal political offices. Defendant then reimbursed each of the employees in cash for the amount of the checks. A similar pattern was followed for state elections.

A typical example of the arrangement occurred in 1987, when defendant reimbursed Deborah Smink, an employee of the company who had written a check for $1,000 to the "Gephardt for President" committee. Defendant also gave her a list of candidates, the desired number and amounts of personal checks that she was to obtain from other employees, and cash for reimbursement of those checks. Ms. Smink carried out these instructions and later gave defendant index cards containing the names, addresses, and occupations of the persons providing the checks. At other times, employees were contacted directly by defendant.

The employees testified that defendant had explained to them that if the Curran-endorsed candidates were successful in their bids for federal political office, they might be expected to favor the anthracite industry. The testimony also revealed that the contributions were made to candidates from both the Republican and Democratic Parties.

Some employees testified that they wrote the checks as a favor to defendant, simply because he had asked them to do so. A few of them had a limited understanding of election law requirements, but realized that they would be identified as contributors. Others indicated that they knew the check writing routine was "wrong."

Defendant testified that he was aware that corporate funds could not be used for federal election campaigns and that there was an annual limit of $4,000 that a husband and wife could contribute to a particular candidate, a limitation that he respected. On six occasions, however, between 1984 and 1987, he exceeded the $1,000 individual contribution limitation for each federal election.

Defendant asserted that his reason for not making contributions in his own name was to avoid being asked for money by other candidates and to allay his concerns for the welfare of his family. He conceded that he knew candidates kept records of contributors on file. He testified that he "was not focused on the Federal Election Commission," that he didn't remember ever hearing about it, and that he "didn't focus on" whether it monitored federal campaign contributions.

The jury found defendant guilty of one count of conspiracy to impede the performance of the lawful functions of the Federal Election Commission and to cause false contribution reports to be filed with it. In addition, he was convicted of three counts of violating 18 U.S.C. §§ 2(b) and 1001 by causing the treasurers of various campaign committees to conceal material facts from the Commission and by causing the treasurers to submit false contribution reports.

After the district court denied his post-trial motions, defendant appealed, asserting:

(1) the trial judge erred in charging the jury that the government did not have to prove that defendant knew of the Election Campaign Act's reporting requirements or that his contributions would be reported to a federal agency;

(2) the trial judge erred in refusing to submit to the jury the issue of whether there were multiple conspiracies rather than a single one as the indictment charged; and

(3) the prosecution was barred by the three-year statute of limitations included in the Election Campaign Act.

## I.

### THE STATUTE OF LIMITATIONS

The keystone of the government's case against defendant was its contention that he violated 18 U.S.C. §§ 2(b) and 1001 by causing material facts to be concealed or false statements to be made to a federal agency. Section 1001 is not confined to election matters and is governed by the five-year statute of limitations generally applicable to the criminal code provisions of Title 18. *See* 18 U.S.C. § 3282.

Defendant asserts that because his alleged misconduct occurred in connection with campaign contributions, the three-year limitations period in Title 2 that is specifically

applicable to such offenses should be applied. *See* 2 U.S.C. § 455(a). A review of the legislative chronology is necessary to understand the defendant's position.

Before 1972, federal campaign contributions were regulated by certain sections of Title 18 of the United States Code and were governed by the five-year statute of limitations. 18 U.S.C. § 3282. Early that year, however, Congress enacted a comprehensive statute entitled the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431–454 (Supp. II 1972)—legislation that supplemented the campaign contribution restrictions codified in Title 18. The new Act included a provision that prohibited making contributions in the name of another. Pub.L.No. 92–225, § 310, 86 Stat. 3, 19 (1972). Although the five-year statute of limitations in Title 18 remained in effect, no such limitations period was included in the initial version of the Election Campaign Act.

In 1974, Congress amended the Act by creating the Federal Election Commission, by limiting the permissible amount of individual contributions, by requiring record keeping and reporting, and by providing procedures for civil and criminal enforcement. Pub.L.No. 93–443, 88 Stat. 1263 (1974). Congress also set the statute of limitations for offenses under the Act in Title 2, as well as the campaign contribution offenses in Title 18, at three years by adding the following language:

"Sec. 406. (a) No person shall be prosecuted ... for any violation of title III of this Act or of section 608, 610, 611, 613, 614, 615, 616, or 617 of title 18, United States Code [the sections applicable to campaign contributions], unless the indictment is found or the information is instituted within 3 years after the date of the violation."

Pub.L.No. 93–443, § 302, 88 Stat. 1263, 1289 (1974). That section was codified at 2 U.S.C. § 455(a).

Two years later, in 1976, the Act was amended once again. The Title 18 campaign provisions were repealed, Pub.L.No. 94–283, § 201(a), 90 Stat. 475, 496 (1976), but their substance was restated and transferred to Title 2. Thus, former 18 U.S.C. § 608 and §§ 610–617 became 2 U.S.C. §§ 441a–441i.[1] In addition, the three-year statute of limitations provision at 2 U.S.C. § 455(a) was amended by striking out "or [of] section 608, 610, 611, 613, 614, 615, 616, or 617 of title 18, United States Code," the language that had made the three-year period applicable to election offenses under Title 18. Pub.L. No. 94–283, § 115(f)(1), 90 Stat. 475, 496 (1976).

Thus, the sections of Title 18 that had been applicable to campaign contributions were repealed and were essentially transferred to Title 2. When that occurred, the cross-reference to the Title 18 provisions in the Election Campaign Act's statute of limitations became unnecessary and was deleted. After the 1976 amendments, therefore, a three-year statute of limitations was applied to the campaign contribution offenses of Title 2.

Proposed amendments in subsequent years to change the limitations period in the Election Campaign Act under 2 U.S.C. § 455(a), from a three-year period to a four- or five-year period were rejected by Congress. Meanwhile, the Title 18 provisions unrelated to the Election Campaign Act have continued to be governed by the general five-year statute of limitations. 18 U.S.C. § 3282.

Based on this history, defendant argues that Congress intended the three-year statute of limitations to apply to all campaign contribution violations, whether codified in Title 2 or in Title 18. We observe, however, that in none of the amendments pertaining to the three-year statute of limitations provision in Title 2 was there a specific reference to the all-purpose criminal statutes of 18 U.S.C. §§ 2(b), 371, or 1001 (the sections underlying the indictment here), although Congress was very clear as to its intention with respect to 18 U.S.C. §§ 608, 610–611, and 613–617 (repealed 1976) (the predecessor sections specifically addressing campaign violations).

The statutory provisions thus cut against the defendant's argument that a three-year

___

1. For example, 18 U.S.C. § 614 prohibited making a contribution through a conduit. In 1976, that offense became 2 U.S.C. § 441f (1976).

statute of limitations was intended for all conduct found violative of the federal election campaign laws. If that result had been intended, Congress would have so stated as it did with those earlier Title 18 sections that were specifically enumerated in the Title 2 statute of limitations provision. The conspicuous absence of such language in the Election Campaign Act relating to sections 2(b), 371, or 1001 of Title 18, is fatal to the defendant's contention.

Although defendant concentrates only on the three-year statute of limitations, essentially his argument rests on the proposition that because it targets specific conduct, the Election Campaign Act supersedes the more general criminal provisions of Title 18. Concededly, the defendant's position has a certain logic and sense of fairness to it in view of the fact that the Election Campaign Act was designed to prevent the underlying conduct that makes defendant vulnerable in this case. Unfortunately for defendant, however, his argument for selective preemption is not persuasive and is not supported by decisional law.[2]

Neither the text of the Election Campaign Act nor the legislative history contains any reference to supersession in general, nor do they even suggest that prosecutions brought under other statutes are to be governed by the three-year statute of limitations. Perhaps defendant is correct in asserting that Congress intended the Election Campaign Act to be all-encompassing, but the problem is that nothing was done to accomplish that result.

In *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979), the Supreme Court explained that it "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." The choice of which charge to bring is entrusted to the prosecutor. *Id.* at 124, 99 S.Ct. at 2204; *see also*

*Garrett v. United States*, 471 U.S. 773, 789–90 n. 2, 105 S.Ct. 2407, 2417 n. 2, 85 L.Ed.2d 764 (1985).

The government's decision to invoke 18 U.S.C. § 1001 in preference to a more specific statute addressing the conduct in question was upheld in *United States v. Hansen*, 772 F.2d 940 (D.C.Cir.1985). The issue there was whether enactment of the Ethics in Government Act of 1978 barred prosecution under the general criminal statute prohibiting false statements. The Court noted the venerable precedent that " 'repeals by implication are not favored' " and rejected the defendant's contention that the civil penalty provided in the Ethics Act was the exclusive sanction that might be imposed. *Id.* at 944 (citations omitted). The sweeping language of section 1001 "clearly embrace[d] the omissions" on the defendant's ethics forms. *Id.* at 943. The Court further stated that "[t]he terms of § 1001 cover falsification of [the] forms; if Congress wished to exclude that coverage it would normally have said so; we will not readily conclude that it did so by implication." *Id.* at 945. As the Court pointed out, implicit repeal requires a "clear and manifest" indication of congressional intent. *Id.* at 948.

In a case having a factual pattern somewhat akin to the one at hand, the United States Court of Appeals for the Fifth Circuit held that the general criminal statutes found in Title 18 (including section 1001) were not supplanted by the federal election laws. *United States v. Hopkins*, 916 F.2d 207, 218 (5th Cir.1990). The Court stated: "The offenses under Title 18 ... stand wholly apart and separate from any violation of the federal election laws." *Id.* at 219. It mattered not to the Court that the election law violations were categorized as misdemeanors while the same conduct was punishable under the felony provisions of Title 18.

Similar holdings in other circumstances can be found in opinions by the Supreme

---

2. The government contends that defendant waived the statute of limitations defense because he did not raise it in the district court. However, in the defendant's Motion to Dismiss the indictment, he asserted preemption by the Election Campaign Act, and in his brief in support of

that Motion, he specifically mentioned the three-year statute of limitations. Moreover, the district court addressed the statute of limitations question in the post-trial opinion. Accordingly, we find that the issue was preserved for appeal.

Court and the Courts of Appeals. *See, e.g., United States v. Woodward,* 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) (per curiam) (proof of currency reporting offense did not preclude proof of section 1001 violation); *United States v. Parsons,* 967 F.2d 452, 456 (10th Cir.1992) (false statements to Internal Revenue Service could be prosecuted either under section 1001 or specific provisions of the Internal Revenue Code); *United States v. Gordon,* 548 F.2d 743, 745 (8th Cir.1977) (false statements to obtain Medicare payments could be prosecuted under either specific criminal statute or section 1001); *United States v. Carter,* 526 F.2d 1276, 1278 (5th Cir.1976) (either section 1001 or specific criminal provision is applicable to offense of false statements on loan applications); *see also United States v. Beacon Brass Co.,* 344 U.S. 43, 46, 73 S.Ct. 77, 79, 97 L.Ed. 61 (1952) (false statements made for purpose of evading taxes punishable under specific provision of Internal Revenue Code or under section 1001).

In sum, an examination of the legislative history of the Election Campaign Act and its amendments uncovers no express evidence that the Act was intended to preempt the general criminal provisions under 18 U.S.C. §§ 2(b), 371, or 1001. Finding therefore that neither statutory language nor history support the defendant's arguments, we must reject the contention that the three-year statute of limitations in the Election Campaign Act applies here.

## II.

### THE CHARGE TO THE JURY ON THE SUBSTANTIVE COUNTS

Evidence that defendant used a conduit to conceal his contributions to election campaigns and that he exceeded the $1,000 limit could have established the basis for misdemeanor convictions under the Election Campaign Act. Because the Act's statute of limi-

tations had expired, however, the government decided to indict defendant under the felony provisions of 18 U.S.C. §§ 2(b) and 1001. Section 2(b) makes it an offense to deliberately cause another person to perform an act that would violate federal criminal law. Section 1001 prohibits the making of a false statement or the concealment of a material fact within the jurisdiction of a government agency.

In this appeal, defendant contends that the trial court did not properly charge the jury on the elements that the government was required to prove in order to obtain a conviction under sections 2(b) and 1001, particularly with respect to the defendant's duty and his intent. We begin with a review of the statutory provisions at issue here.

■ Section 1001 proscribes two different types of conduct: concealment of material facts and false representations. The latter requires proof of actual falsity, whereas concealment must be established through evidence of willful nondisclosure by means of a "trick, scheme, or device." [3] *See United States v. Mayberry,* 913 F.2d 719, 722 n. 7 (9th Cir.1990); *United States v. Anzalone,* 766 F.2d 676, 682 (1st Cir.1985); *United States v. Tobon–Builes,* 706 F.2d 1092, 1096 (11th Cir.1983); *United States v. Diogo,* 320 F.2d 898, 902 (2d Cir.1963); *see also United States v. Kenny,* 236 F.2d 128 (3d Cir.1956).

■ In order to convict under a section 1001 concealment charge, the government must show that a defendant had a legal duty to disclose the facts at the time he was alleged to have concealed them. *See United States v. Gimbel,* 830 F.2d 621, 624 n. 2 (7th Cir.1987); *United States v. Nersesian,* 824 F.2d 1294, 1312 (2d Cir.1987); *United States v. Hernando Ospina,* 798 F.2d 1570, 1578 (11th Cir.1986); *United States v. Larson,* 796 F.2d 244, 246 (8th Cir.1986); *Anzalone,* 766 F.2d at 683. *But see Tobon–Builes,* 706 F.2d at 1099. Here, the government concedes

**3.** Section 1001 provides in full:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, *or* makes any false, fictitious or fraudulent statements or represen-

tations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

18 U.S.C. § 1001 (emphasis added).

that the duty to disclose the source of the contributions to the Federal Election Commission was that of the campaign treasurers, not that of defendant. Hence, because there was no duty on the part of defendant to disclose these facts to the Commission, he cannot be guilty of concealment directly under section 1001.

■ Moreover, the false statements prong of section 1001 is not patently applicable to the conduct challenged here. Intent, or *mens rea*, is a vital component of a section 1001 violation, and the government must prove that prohibited conduct was performed "knowingly and willfully." That burden applies even though a defendant need not be aware of the jurisdictional fact that the false statement or concealment is within the statutory authority of a specific governmental agency. *United States v. Yermian*, 468 U.S. 63, 73, 104 S.Ct. 2936, 2941, 82 L.Ed.2d 53 (1984); *United States v. Leo*, 941 F.2d 181, 190 (3d Cir.1991).

To establish knowing and willful conduct in the making of a false statement, the government must show that a defendant "acted deliberately and with knowledge that the representation was false." *Hopkins*, 916 F.2d at 214; *cf. United States v. Glantzman*, 447 F.2d 199, 200 (3d Cir.1971) (government failed to prove that defendant had personal knowledge of falsity). As the Court concluded in *United States v. Weatherspoon*, 581 F.2d 595, 601 (7th Cir.1978), to convict a person accused of making a false statement, the government must prove not only that the statement was false, but that the accused knew it to be false. Thus, the government is required to show that the misrepresentation was not made innocently or inadvertently.

■ The government concedes that the false statements at issue here were the contributor lists submitted by various campaign treasurers to the Federal Election Commission. Defendant did not prepare or file such reports, and consequently, he did not make the false statements to the Commission. The defendant's conduct, therefore, did not fall directly within the scope of section 1001.

To bridge that gap, the government used section 2(b) in conjunction with section 1001 to charge defendant with causing the campaign treasurers to file false reports. Section 2(b) prohibits "willfully caus[ing] an act to be done which if directly performed by ... another would be an offense against the United States...." The use of section 2(b) as the necessary link to convict defendant, however, posed an additional problem for the government.

■ When a defendant's culpability is based, not on his own communications with the federal agency, but on information furnished to the agency by an intermediary, the element of intent takes on a different cast than it does if a direct violation of section 1001 is asserted. A defendant charged under section 2(b) with willfully causing another person to file a false report, can be convicted even if that intermediary was unaware that the document was inaccurate. *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1097 (3d Cir.1989).

Section 2(b) imposes criminal liability on those who possess the *mens rea* to commit an offense and cause others to violate a criminal statute. *See id.; United States v. Heyman*, 794 F.2d 788, 791 (2d Cir.1986). Under section 2(b), the intermediary committing the *actus reus*, the physical aspect of a crime, may be blameless and, therefore, is not the person whom society seeks to punish. To fix blameworthiness on the actual malefactor, section 2(b) merges the *mens rea* and *actus reus* elements and imposes liability on the person possessing the "evil intent" to cause the criminal statute to be violated. *See United States v. Richeson*, 825 F.2d 17, 20 (4th Cir.1987) (although defendant customer was under no duty to file a currency report, by virtue of section 2(b), his willful intent combined with the bank's duty to report constituted concealment under section 1001).

■ When proceeding under section 2(b) in tandem with section 1001, the government must prove that a defendant caused the intermediary to make false statements. The intent element differs from that needed when the prosecution proceeds directly under section 1001. The prosecution must not only show that a defendant had the requisite intent under section 1001 (deliberate action

with knowledge that the statements were not true), but must also prove that he "willfully" caused the false representations to be made.

■ "Willfulness" in this context is an important component of section 2(b), and it is necessary that the term be understood. Our research has not revealed any controlling case law expounding on the proper construction of "willfulness" required for a charge under section 2(b) linked with section 1001 in an Election Campaign Act case. Accordingly, we seek guidance from case law construing the term as used in analogous statutes.

Some time after the district court concluded its task in the case at hand, the Supreme Court handed down an instructive opinion discussing willfulness in *Ratzlaf v. United States*, — U.S. —, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). The defendant in *Ratzlaf* was accused of structuring cash deposits to evade the federal regulation requiring banks to report amounts deposited in excess of $10,000. Although the bank has a duty to file the reports, the statute prohibits a customer from breaking a single transaction into two or more segments of less than $10,000 so as to evade the necessity of having reports filed.

The Supreme Court recognized three essential components for finding that a defendant acted "willfully." In so doing, the Court held that a trial judge's charge was insufficient when it only required the government to prove the defendant customer's knowledge of the bank's reporting duty and his attempt to frustrate that obligation, but failed to instruct the jury that the prosecution had to show that defendant knew that structuring was unlawful. *Id.* at —, 114 S.Ct. at 663.

The government had contended that because an ordinary person would not innocently engage in structuring, it would be reasonable to hold a defendant responsible for evading the reporting requirements without the need to prove specific knowledge that such evasion is unlawful. The *Ratzlaf* Court rejected that argument, commenting that it was "unpersuaded ... that structuring is so obviously 'evil' or inherently 'bad' that the 'willfulness' requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring." *Id.* at —, 114 S.Ct. at 662.

Cases in the Courts of Appeals have also adverted to the willfulness requirement under the currency reporting statutes. When a defendant is charged under section 2(b) with "willfully causing" an inaccurate report to be filed or omitted from being filed, the government must show that the defendant has "specific knowledge of the reporting requirements and intended to cause them to be evaded." *Nersesian*, 824 F.2d at 1314; *see also Tobon–Builes*, 706 F.2d at 1101 (defendant's willfulness established by evidence that he knew of reporting duty and purposely sought to prevent financial institutions from filing required information).

The meaning of willfulness in a section 2(b) case was discussed in *United States v. Barel*, 939 F.2d 26 (3d Cir.1991), where a defendant was charged with causing bank employees to file false entries in bank records. The evidence showed that defendant did so in an attempt to defraud his wife. His conviction was reversed because "the government did not make a showing of any specific intent to cause a bank to fail in a statutory duty, [the defendant's] acts did not undermine [the] statutory purpose [of requiring correct entries]." *Id.* at 43.

The underlying offense was based on 18 U.S.C. § 1005, which requires the government to prove an "intent to injure or defraud." Yet, to convict the defendant of causing others to violate section 1005, we held that the government had to prove that he specifically intended to violate federal law, a higher level of culpability than "intent to injure or defraud." *Barel*, 939 F.2d at 43. Even though the defendant intended to harm the bank and thus could have been convicted directly under section 1005 had he personally made the false entries, he was not sufficiently culpable under section 2(b) because he lacked the specific intent to cause the bank to violate federal law.

Although the defendant in *Ratzlaf* was not charged with violations of sections 2(b) and 1001, we find nothing in the Court's discussion of willfulness that would confine the rationale to the currency reporting statute. In this respect, *Ratzlaf* is unlike *Cheek v.*

*United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), where the opinion carefully limited the explanation of "willfulness" to circumstances governed by the complexities of the Internal Revenue Code.[4]

In any event, there are three similarities between the statutes discussed in *Ratzlaf* and in this case and between the conduct at which those statutes are directed that persuade us to apply the *Ratzlaf* willfulness standard to the circumstances here.

(1) The disclosure obligations imposed by the Election Campaign Act correspond with those dictated by the currency reporting statute. This similarity involves the defendant's knowledge of a third party's duty to disclose information to a government agency.

(2) The underlying conduct is not "obviously 'evil' or inherently 'bad.'" We see little difference between breaking a cash transaction into segments of less than $10,000 and making a contribution in the name of another.

(3) The conduct at issue in both cases was made illegal by a regulatory statute.[5]

The pertinent case law convinces us that a proper charge for willfulness in cases brought under sections 2(b) and 1001 in the federal election law context requires the prosecution to prove that defendant knew of the treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful. In that light, we review the instructions to the jury in the case at hand.

The indictment here alleges that defendant falsified and concealed material facts in that he "did cause the treasurer[s]" of various campaign committees to "report to the [Federal Election Commission] that [various individuals] had personally contributed [sums] when in truth and in fact ... he had reim-bursed [those persons] for [those] contribution[s]...." In short, defendant "caused" the treasurers to file reports that did not accurately reveal defendant as the actual contributor.

■ The trial judge charged the jury "as a matter of law, that the defendant had a legal duty to disclose the facts in question to the agency in question, the Federal Election Commission or to make certain that [the] information would have gotten to them." On the issue of culpability, the trial judge instructed the jurors as follows:

> "The third element you must find is that the defendant acted willfully. This means knowingly and voluntarily.... This means that he must have done what he did with a specific intent of doing something unlawful and not by accident or for some innocent reason.... [I]t is not necessary for the Government to prove the defendant knew that a particular act or failure to act was a violation of law under which the defendant is presently charged.... What is required [to be proved is that he knowingly and willfully did something that] ... was unlawful, and that [he] knew what [he was] doing was wrong, that it was ... clearly ... something that was wrong.... It is important that [defendant knew] what [he was] doing is wrong in the eyes of the law, that [he knew] that [he was] concealing facts, or that [he was] in this case, [c]ausing or would [c]ause others to have information which would be false."

The trial judge pointed out that it is unlawful to make a contribution in the name of another person and illegal to give more than $1,000 for a particular election. Again referring to intent, the judge charged, "[A defendant does not] have to know about the specific law, but did ... have the intent to do something unlawful."

---

4. The dissent in *Ratzlaf* seemed to agree with the willfulness standard articulated in *Tobon-Builes*—(1) that the defendant had to have known about the reporting requirement, and (2) that by structuring the transactions, he had to have purposely sought to prevent the bank from submitting reports. That case also was prosecuted under sections 2(b) and 1001. Thus, all of the Justices appear to accept at least those two requirements in currency reporting cases.

5. *Compare United States v. Zehrbach,* Nos. 93-7477 & 93-7493, slip op. at 18 n. 9, 1994 WL 96690 (3d Cir. Mar. 28, 1994) (proof of defendants' knowledge of illegality of conduct under *malum in se* statute governing bankruptcy fraud, 18 U.S.C. § 152, was not required under *Ratzlaf v. United States,* — U.S. —, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)).

The instruction that defendant had a legal duty to disclose the "facts in question" (i.e., the name of the actual contributor) to the Federal Election Commission was a clear error of law. Defendant had no such duty. This misstatement of the law was so fundamental to the issues before the jurors that it fatally infected the whole charge. In effect, this instruction relieved the government of proving its case under section 2(b) and was contrary to the indictment that accused defendant of "willfully causing" the various campaign treasurers to file inaccurate reports.

The incorrect explanation of the law on the defendant's duty toward the Commission constituted plain error and requires that a new trial be granted. As we observed in *United States v. Thame*, 846 F.2d 200, 205 (3d Cir.1988), plain error is determined "on a case-by-case basis [considering] such factors as the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of judicial proceedings if the error stands uncorrected—all with an eye toward avoiding manifest injustice." We apply the plain error rule sparingly, but it cannot be avoided on this record. *See United States v. Young*, 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985); *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir.1993); *United States v. Anderson*, 859 F.2d 1171, 1176 (3d Cir.1988) (error must affect substantial rights and have unfair or prejudicial impact on jury deliberations such that affirmance will result in manifest injustice).

■ Having determined that the case must be retried, we believe it appropriate to discuss other deficiencies in the jury instructions that should be corrected.[6] The charge was inadequate in that it failed to state that the government had the burden of proving that defendant knew of the campaign treasurers' obligation to submit contribution reports to the Federal Election Commission. Although the jury was told that it could

consider evidence bearing on willfulness and knowledge, the charge did not make it clear that these were elements of the offense, not simply something that the jury might use in its deliberations. The jurors should have been told that to convict defendant, the government had to prove that he knew that the treasurers had such a duty. *See Ratzlaf*, —— U.S. at ——, 114 S.Ct. at 662–63; *Nersesian*, 824 F.2d at 1314.

■ Nor was it adequate to simply charge the jury that to find intent it could consider whether defendant knew that he was doing "something unlawful" or that he was doing "something wrong." In *Barel*, the defendant intentionally caused bank employees to make false entries—something he had to know was wrong, if not illegal. Nevertheless, we concluded that the government had failed to show that he had the specific intent to cause the bank to fail in its statutory duty. *Barel*, 939 F.2d at 43.

Because the indictment was based on section 1001 in conjunction with section 2(b) and not on the Election Campaign Act, the jury should have been charged that defendant could not be found guilty simply because he violated provisions of the Election Campaign Act. The government no longer could obtain a conviction on such allegations because the statute of limitations had run.

Although section 1001 is broad in its scope, it is not an all-encompassing counterpart of underlying agency reporting obligations. To read it as the government contends here, would in effect broaden the reporting duty imposed on campaign treasurers to be applicable to contributors as well. We find no indication that Congress intended such an expansion of its regulatory scheme.

In sum, the government had the burden of proving that defendant was aware that the campaign treasurers were bound by the law to accurately report the actual source of the contributions to the Commission, that the defendant's actions were taken with the specific intent to cause the treasurers to submit

---

6. Although the government argues that defendant failed to properly object to portions of the charge discussing intent, we are satisfied that the discussion between the trial judge and counsel

following the charge was adequate to preserve the point. In any event, the plain error regarding the defendant's duty requires reversal.

a report that did not accurately provide the relevant information, and that defendant knew that his actions were unlawful.

The convictions cannot stand on the substantive counts because the jury's deliberations were not guided by the correct standard. Accordingly, a new trial must be granted.[7]

## III.

### THE CONSPIRACY CHARGE

The indictment charged that defendant and others conspired to defraud the United States in violation of 18 U.S.C. § 371 by impeding the Federal Election Commission's performance through obstruction and interference with the Commission's reporting requirements, and by causing fictitious statements to be made on reports required to be sent to the Commission. The jury found defendant guilty on this count as well.

As stated earlier, the misstatement of the law applicable to the defendant's legal duty to disclose facts to the Commission amounted to plain error. This misstatement undermined not only the substantive counts, but the conspiracy one as well. The essence of conspiracy is an agreement to commit an act that is illegal. If a jury is misled into considering as unlawful the omission of an act that the defendant is under no duty to perform, then a finding of conspiracy based on such conduct cannot stand. It follows that the conspiracy count must therefore be vacated. *See United States v. Feola,* 420 U.S. 671, 695, 95 S.Ct. 1255, 1269, 43 L.Ed.2d 541 (1975) ("[K]nowledge of the [conspirators] is relevant to the same issues and to the same extent as it may be for conviction of the substantive offense."); *Parr v. United States,*

363 U.S. 370, 393, 80 S.Ct. 1171, 1184, 4 L.Ed.2d 1277 (1960) (where, on the record, conviction on substantive count cannot stand, neither can conviction for conspiring to commit that offense); *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959) (Defendants were not liable for the wagering tax and could not, therefore, have been convicted of the crime which they were charged with having conspired to commit; hence, conspiracy conviction reversed.); *United States v. Berkery,* 889 F.2d 1281, 1285 (3d Cir.1989) ("[T]he seriousness of the error ... results from the admissions of all elements of the conspiracy which, by its nature, is so intertwined with the substantive offenses such that the admission of one count results in the admission of virtually all."); *United States v. Aguon,* 851 F.2d 1158, 1169 (9th Cir.1988) (*en banc*) (error in instructions on substantive count of extortion requires reversal of conviction on conspiracy to extort);[8] *see also United States v. Tormos–Vega,* 959 F.2d 1103, 1114 (1st Cir.1992) (affirming conspiracy conviction where there was no "spillover" from erroneous instructions on substantive count).

In charging the jury on the conspiracy count, the trial court essentially incorporated the instruction on intent it had used for the substantive counts. The comments we have previously made about the failings of the instruction on intent apply to the conspiracy count as well. As noted in *American Investors,* 879 F.2d at 1100, "[i]n order to prove a conspiracy, the government must show an agreement to commit an unlawful act combined with intent to commit the underlying offense." On retrial, the instructions on intent as to the conspiracy count must track those applicable to the substantive counts.

---

7. In its charge, the court explained that it had found as a matter of law that the factors relating to materiality and the jurisdiction of a federal agency had been satisfied. We agree that these points were properly decided by the judge, but we think it prudent that they not be discussed with the jury because those matters have no bearing on the issues the jury is to resolve, and statements about those factors might prove confusing or misleading. For example, in discussing the jurisdiction of the federal agency, the judge told the jury: "This means that the Government doesn't have to prove that the defendant knew

the facts related to or would somehow be submitted to a U.S. Government agency." That statement was correct as to the agency jurisdiction (a non-issue), but was erroneous as to the scope of the defendant's culpability under section 2(b).

8. In *Evans v. United States,* —— U.S. ——, ——, 112 S.Ct. 1881, 1885, 119 L.Ed.2d 57 (1992), the Supreme Court declined to accept the *Aguon* Court's interpretation of the Hobbs Act. The Supreme Court's decision in *Evans* does not affect the principle for which *Aguon* is cited here.

Because the case will be retried, we think it helpful to discuss the other contention that defendant raised with respect to the conspiracy issue—that the district court erred in failing to submit to the jury the question of whether the evidence established a single or multiple conspiracies. The trial judge did not give the jurors that option, but instead only charged them to determine whether the evidence supported the existence of a single conspiracy.

 The issue of whether a single or multiple conspiracies existed is a fact question to be decided by a jury. *United States v. Smith*, 789 F.2d 196, 200 (3d Cir.1986). If a defendant asks for a charge on multiple conspiracies and there is sufficient evidence to support such an instruction, the failure to grant the request can be reversible error. *See, e.g., United States v. Barr*, 963 F.2d 641, 650–51 (3d Cir.1992); *United States v. Dennis*, 917 F.2d 1031, 1033 (7th Cir.1990); *United States v. Jackson*, 696 F.2d 578, 586 (8th Cir.1982). *But see United States v. Evans*, 970 F.2d 663, 675 (10th Cir.1992).

The question of whether there was a single or multiple conspiracies is important in this case not only because of a possible variance between the allegations made in the indictment and the proof tendered at trial, but also because of the presence of a possible statute of limitations defense. The prosecution was brought within a few days of the lapse of the applicable five-year statute of limitations. Some of the alleged overt acts occurred within the limitations period, but the asserted agreement or agreements with alleged co-conspirators Kopko and Price occurred outside the applicable time. Consequently, the prosecution would be barred if the acts occurring within the limitations period were not in furtherance of the conspiracy (or conspiracies) that had begun earlier. In determining whether such a connection existed, the jury should be aware of the possibility of multiple conspiracies.

The determination of whether an instruction on single or multiple conspiracies must be submitted to the jury rests on the facts developed during the trial. Because we are not in a position to predict what that evidence will be on retrial, we cannot issue a definitive ruling at this time. The evidence in the first trial, however, did reveal transactions with different individuals with different motives in separate political campaigns in various years. If that same pattern develops on retrial, the defendant's request for a charge on multiple conspiracies should be given serious consideration.

The judgment of the district court will be vacated, and the case will be remanded for a new trial.

## SUR PETITION FOR PANEL REHEARING

June 13, 1994

Present: BECKER, NYGAARD, and WEIS, Circuit Judges.

The petition for panel rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of the court, and after consideration of said petition, it is

ORDERED that the petition for panel rehearing is denied.