UNITED STATES of America,

v.

Yah Lin "Charlie" TRIE, Defendant.

No. Crim. 98–0029–1 (PLF).

United States District Court, District of Columbia.

July 17, 1998.

Reid Henry Weingarten, William T. Hassler, Steptoe & Johnson, L.L.P., Washington, DC, for Yah Lin 'Charlie' Trie, defendant.

Roger J. Lerner, Lerner, Reed, Bolton & McManus, L.L.P., Washington, DC, for Bank of China, defendant.

Thomas W. McNamara, U.S. Department of Justice, Organized Crime Section, Washington, DC, for U.S.

## OPINION

### PAUL L. FRIEDMAN, District Judge.

This case is before the Court on eleven pre-trial motions filed by the defendant, Yah Lin "Charlie" Trie, and the motion filed by the United States for reciprocal discovery. The Court heard argument on the motions on July 1, 1998.

The Court will reserve ruling on defendant's Motion 1A (to Dismiss Count 1 for Failure to State an Offense Under 18 U.S.C. § 371 and Violation of Due Process), Motion 1B (to Dismiss Count 1 Based on Improper Grand Jury Instructions or to Compel Disclosure of Grand Jury Instructions), and Motion 2 (to Dismiss Counts 9–11 for Failure to State an Offense under 18 U.S.C. § 1001). On July 27, 1998, the Court will hear argument on motions in *United States v. Maria Hsia*, Crim. No. 98–057, that raise issues similar to those raised by Mr. Trie in Motions 1A and 1B. Ms. Hsia has requested that the Court reserve ruling on these motions until it has heard argument on the motions in her case.[1] In addition, Ms. Hsia's Motions 5 and 6 appear to raise issues that are similar to those in Mr. Trie's Motion 2. The Court therefore will reserve ruling on Mr. Trie's Motions 1A, 1B and 2.

At the motions hearing, Mr. Trie and the government jointly requested that, pending their efforts to resolve the issues, the Court defer ruling on Defendant's Motion 5 (to Dismiss Count 12 Based on Wharton's Rule), those portions of Defendant's Motion 9 (to Compel Discovery and Disclosure of Excul-

patory Information) that do not relate to *Brady* material, and the government's Motion 1 (for Reciprocal Discovery).[2] This Opinion will address the remainder of the motions.

For the reasons discussed below, the Court will grant in part and deny in part defendant's Motion 4 (to Dismiss Counts 13–15 for Improper Venue), Motion 7 (to Strike Irrelevant and Prejudicial Alleged Objectives of the Scheme to Defraud in Counts 2–8 of the Indictment), Motion 8 (for a Bill of Particulars) and the portion of defendant's Motion 9 relating to *Brady* material. The Court will deny defendant's Motion 3 (to Dismiss Counts 1 and 9–11 for Failure to State an Offense), Motion 6 (to Dismiss Counts 1–11 as Preempted by the Federal Election Campaign Act) and Motion 10 (for Leave to File Additional Pre–Trial Motions).

## I. BACKGROUND

### A. Federal Election Campaign Act

The Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431 *et seq.*, provides a detailed set of limits governing contributions to electoral campaigns and expenditures by candidates. Of specific relevance to this case, FECA provides that "[n]o person shall make contributions" that exceed certain limits set forth in the statute. 2 U.S.C. § 441a. The statute also prohibits "foreign nationals" from making contributions, 2 U.S.C. § 441e, and prohibits any person from making contributions in the name of another or knowingly permitting his name to be used to effect such a contribution, 2 U.S.C. § 441f. The statute charges the Federal Election Commission ("FEC") with the administration and enforcement of FECA. 2 U.S.C. § 437c. It provides for both civil and criminal enforcement, and specifies criminal penalties for certain viola-

---

1. Ms. Hsia also requested that the Court reserve ruling on Mr. Trie's Motion 6 (to Dismiss Counts 1–11 as Preempted by the Federal Election Campaign Act). Because it is so clear that Motion 6 should be denied, the Court will not postpone a decision on that motion. In the event that Ms. Hsia later persuades the Court to take a position different from that expressed in this Opinion, Mr. Trie may move the Court to reconsider its ruling on Motion 6.

2. After oral argument, the government filed an unopposed Motion to Dismiss the Second and Third Objects of the Conspiracy Alleged in Count 12. *See* Indictment at 31, ¶ 6. Granting the government's motion disposes of the issues raised in defendant's Motion 5, to Dismiss Count 12 Based on Wharton's Rule.

tions, up to a maximum of one year imprisonment and/or a fine. 2 U.S.C. § 437g(d).

A "contribution" is defined by statute, in relevant part, as "money or anything of value made by any person for the purpose of influencing any election for *Federal* office," *see* 2 U.S.C. § 431(8)(A) (emphasis added), and the contribution limits set forth in FECA undisputably apply to contributions made to candidates for federal office, otherwise known as "hard money" contributions. The government does not dispute that FECA does not generally cover contributions for state or local campaigns and non-campaign activities such as issue advocacy, otherwise known as "soft money" contributions. It does maintain, however, that a few specific provisions of FECA, including Section 441e, governing contributions by foreign nationals, do apply to soft money contributions. National political parties that support both federal and state/local candidates have set up separate accounts: "hard money" accounts for contributions that are subject to FECA and that are used for candidates in federal elections and "soft money" accounts for funds to be used only for non-federal campaigns and for non-campaign activities.

FECA requires "political committees," including national political parties, to file reports with the FEC identifying each person who made "contribution[s]" in the aggregate annual amount of $200 or more. 2 U.S.C. § 434. FEC regulations go further, requiring national political party committees to report any receipt of funds over $200, regardless of whether the funds are deemed "hard money" or "soft money." 11 C.F.R. § 104.8(e) (requiring information, including name, address and occupation of all individuals or entities who "donate" an aggregate amount in excess of $200 in any calendar year to a national party committee's non-federal account(s)).

### B. The Indictment

Count 1 of the indictment charges that Mr. Trie and his co-defendant, Yuan Pei "Antonio" Pan,[3] conspired to defraud the United States by impairing and impeding the lawful functions of the FEC in violation of 18 U.S.C. § 371 (the general conspiracy statute). Indictment at 6, ¶ 14.[4] The alleged conspiracy encompasses several different sorts of contributions with which Mr. Trie allegedly was involved: (1) he allegedly made a number of contributions from his own personal account for which he was reimbursed from foreign sources, (2) he allegedly set up "straw" donors or "conduits" to make contributions and he then used money from foreign sources to reimburse those straw donors, and (3) he allegedly made contributions through one or more companies. Indictment at 8–17. Count 1 alleges that by making these allegedly fraudulent contributions, Mr. Trie impaired the FEC in its attempts to enforce the FECA and thereby defrauded the United States.

Counts 2–8 allege that Mr. Trie (and in some counts Mr. Pan) devised a scheme to defraud the Democratic National Committee ("DNC") for the purpose of obtaining property and personal benefit. Indictment at 18, ¶ 2. The scheme allegedly included using foreign money to make contributions and concealing the source of the money from the DNC. These counts charge violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, because Mr. Trie allegedly used the mail, faxes and telephone in his scheme to defraud the DNC.

Counts 9–11 charge Mr. Trie with aiding and abetting the making of false statements to a government agency in violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2. The indictment alleges that Mr. Trie "knowingly and willfully" caused the DNC to create and submit false reports to the FEC by making false statements to the DNC which the DNC included in its reports to the FEC. Count 9 pertains to the DNC's January 22, 1996 quarterly report to the FEC; Count 10 to the DNC's April 15, 1996 quarterly report; and Count 11 to the DNC's October 15, 1996 quarterly report.

Finally, Counts 12–15 allege that Mr. Trie tampered with witnesses and/or obstructed

---

3. Mr. Pan is a fugitive.

4. The grand jury did not charge conspiracy to violate the Federal Election Campaign Act under 18 U.S.C. § 371.

proceedings relating to the Senate investigation of illegal or improper activities in connection with the 1996 federal election campaign and the grand jury investigation into the charges against Mr. Trie. Indictment at 30–38. Count 12 charges a conspiracy to obstruct justice in violation of 18 U.S.C. § 371, Counts 13 and 15 charge violations of 18 U.S.C. § 1512(b)(2) (witness tampering), and Count 14 charges a violation of 18 U.S.C. § 1505 (obstruction of Congressional investigation). All of these counts allege that Mr. Trie instructed a witness to alter, destroy or conceal documents responsive to a subpoena or related to an investigation.

## II. MOTIONS TO DISMISS

### A. *Defendant's Motion 3, to Dismiss Counts 1 and 9–11 for Failure to State an Offense*

Mr. Trie claims that Counts 1 and 9–11 require the government to prove that Mr. Trie was aware of the DNC's legal obligation to file contribution reports with the FEC, and he argues that the failure of the indictment to allege that he knew of the DNC's reporting obligations requires dismissal of these counts. The Court agrees with Mr. Trie that the government must prove that he knew of the DNC's reporting obligations, but disagrees that the remedy is dismissal of the indictment for failure to allege knowledge. The issue is whether the government can prove such knowledge at trial. If the government's evidence of knowledge is insufficient at trial, the Court can grant a motion for judgment of acquittal. If the government's case survives such a motion, the Court will give the jury appropriate guidance through proper jury instructions.

■ Counts 9–11 of the indictment charge Mr. Trie with causing the DNC to make false statements in its reports to the FEC in violation of 18 U.S.C. § 1001 (false statements) and 2 (aiding and abetting). Section 1001 provides, in relevant part, that "whosoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, *knowingly and willfully* (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry" shall be held criminally liable. 18 U.S.C. § 1001 (emphasis added). Because Mr. Trie did not make any representation or statement directly to the FEC and had no duty to disclose any facts to the FEC, he cannot be prosecuted directly under Section 1001. *See United States v. Curran*, 20 F.3d 560, 566 (3d Cir. 1994); *Republican Nat'l Comm. v. Federal Election Comm'n*, 76 F.3d 400, 406 (D.C.Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997) (contributor has no duty to reveal identity to FEC or political committees). The government therefore has charged Mr. Trie with aiding and abetting the making of false statements by another, the Democratic National Committee, in violation of 18 U.S.C. § 2(b). Section 2(b) also requires a showing of willfulness, so the government must prove that Mr. Trie "willfully" caused the DNC to file false reports. *See* 18 U.S.C. § 2(b) ("Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.").

■ The Court agrees with Mr. Trie that when a contributor is charged as an aider and abettor in the federal election law context for causing an innocent intermediary to make a false statement to the FEC, the prosecution must prove that "defendant knew of the [political party] treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful." *See United States v. Curran*, 20 F.3d at 569. These are elements of the offense to be proved beyond a reasonable doubt at trial, and the jury must be so instructed. *Id.* at 570; *see Ratzlaf v. U.S.*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (in context of banking laws, jury must find that defendant knew of regulatory reporting requirement in order to find that defendant acted willfully); *but see United States v. Gabriel*, 125 F.3d 89, 103 (2d Cir.1997) (refusing to adopt *Curran* defini-

tion of willfulness in Section 2(b) prosecution).

While in most criminal prosecutions a showing of willfulness does not require proof that the defendant was aware that his conduct violated a particular statute or regulation, the Court is persuaded that this case falls comfortably within an exception to that general rule. *See Bryan v. United States,* — U.S. —, — – — & nn. 18, 20, 118 S.Ct. 1939, 1946–47 & nn. 18, 20, 141 L.Ed.2d 197 (1998) (where "highly technical" statutes such as Internal Revenue Code and banking regulatory scheme at issue in *Ratzlaf* present "danger of ensnaring individuals engaged in apparently innocent conduct," showing of willfulness requires proof that defendant had knowledge of specific provision of statute allegedly violated); *see also id.* 118 S.Ct. at 1951 (Scalia, J., dissenting); *Ratzlaf v. U.S.,* 510 U.S. at 149, 114 S.Ct. 655. The Court's conclusion is compelled, first, by the overlay of the Section 2(b) willfulness requirement on the Section 1001 willfulness requirement and, second, by Congress' expressed concern that the complexity and nature of federal election law might ensnare innocent individuals unless the government is required to prove a high standard of intent.[5]

▮▮▮▮ Section 2(b) and Section 1001 both require the government to prove willful conduct: For purposes of Section 1001, the government must prove that a criminal defendant knew that the statement at issue was false and that he or she willfully made the false statement, *United States v. Yermian,* 468 U.S. 63, 69, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984); *Bryson v. United States,* 396 U.S. 64, 69–70, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), while under Section 2(b) the government must prove that the defendant willfully caused a prohibited act, in this case the making of a false statement by the DNC. As a matter of logic, the government cannot

prove that a defendant willfully caused the making of a statement he knew to be false in the absence of evidence that the defendant knew that the statement was required to be made. *See United States v. Hayden,* 64 F.3d 126, 132 n. 8 (3rd Cir.1995) ("[I]f there had been no duty to disclose information in *Curran* and *Ratzlaf,* then the defendants could not have committed those offenses"); *cf. United States v. Tobon–Builes,* 706 F.2d 1092, 1100–01 (11th Cir.1983) (in currency transaction prosecution, government proved Section 1001 and Section 2(b) liability by showing that defendant "knew about the currency reporting requirement and that he purposely sought to prevent the financial institutions from filing required reports"). In this case, the government therefore must prove that Mr. Trie knew of the DNC's obligation to report all contributions over $200 to the FEC.

Such proof is especially required in the federal election law context where the statutory and regulatory schemes are complex and technical and proscribe behavior that an ordinary person would not know is criminal. *See Ratzlaf v. U.S.,* 510 U.S. at 143–44; *United States v. Curran,* 20 F.3d at 568–69. When Congress amended FECA in 1976 to centralize the criminal penalties for violations of the Act, it was acutely aware that the combination of the nature of the `statute, which criminalizes activity that is not inherently evil, and the complexity of the statute, which imposes highly technical reporting requirements, presented the risk that non-culpable people might be prosecuted. *See* 122 Cong. Rec. 8577 (March 30, 1976) (statement of Representative Rostenkowski) ("I am more concerned, however, about the provisions in the [pre–1976] law that provide harsh penalties for what may be innocent and often unknowing violations of its more technical requirements . . . . we have arrived at a very sorry state when a taxpayer becomes a criminal because he did not know that he

---

5. The Court recognizes that looking to both Section 1001 and the underlying statutory scheme in order to define Section 2(b) willfulness necessarily means that Section 2(b) willfulness will be defined differently in different contexts. *See United States v. Gabriel,* 125 F.3d 89, 103 (2d. Cir.1997). While it would be convenient if the courts could establish a uniform definition of willfulness, the inconvenience caused by the dif-

fering definitions of willfulness is inherent in the Section 2(b) standard which in each case necessarily incorporates the scienter requirements of the underlying statute with which it is used. It is the interplay of the two statutes the government has found it necessary to employ and the separate mens rea requirement of each that leads to this result. *United States v. Hayden,* 64 F.3d 126, 132 (3d Cir.1995).

must disclose certain information ...").
Congress therefore provided that criminal
violations prosecuted under FECA can result
only in misdemeanor penalties and provided
further that criminal penalties apply only to
persons who "knowingly *and* willfully" com-
mit a violation of the Act. 2 U.S.C.
§ 437g(d)(1) (emphasis added). In establish-
ing the civil and criminal liability penalty
scheme for FECA, Congress expressly stat-
ed that the "knowing and willful" require-
ment was intended to limit liability to cases
in which "the acts were committed with a
knowledge of all the relevant facts and a
recognition that the action is prohibited by
law." H.R.Rep. No. 94–917, at 4 (1976).

Where FECA provides the underlying
statutory scheme for a felony prosecution
under the generally applicable false state-
ments statute, it is at least as important to
require the government to prove that the
defendant knew of the statutory and regula-
tory requirements at issue as Congress con-
cluded it was for a misdemeanor conviction
under FECA itself. Like the Third Circuit,
the Court therefore concludes that a showing
of "willfulness" requires proof that Mr. Trie
knew of the DNC's reporting obligations,
that he attempted to frustrate those require-
ments, and that he knew his conduct was
unlawful; the Court will so instruct the jury.
*See United States v. Curran*, 20 F.3d at 569.[6]

■ The Court's conclusion that the
government must prove that Mr. Trie knew
of the DNC's reporting requirements, how-
ever, does not require dismissal of the in-
dictment as the defendant urges. As the
government quite correctly points out, an in-
dictment is sufficient if it (1) "contains the
elements of the offense charged and fairly
informs a defendant of the charge against
which he must defend, and [(2)] enables
him to plead an acquittal or conviction in bar
of future prosecutions for the same offense."
*Hamling v. United States*, 418 U.S. 87, 117,
94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The
indictment in this case alleges that Mr. Trie
"willfully" caused the DNC to file false re-
ports with the FEC and thus sufficiently
alleges the essential element of willfulness to
withstand defendant's motion to dismiss.
Indeed, the *Curran* case itself involved the
adequacy of jury instructions, not whether
the indictment itself properly stated an of-
fense. *See United States v. Curran*, 20 F.3d
at 569–70; *United States v. Oakar*, 924
F.Supp. 232, 242 (D.D.C.1996), *aff'd in part,
rev'd on other grounds*, 111 F.3d 146
(D.C.Cir.1997). Whether Mr. Trie knew of
the reporting requirement of the DNC is a
matter for proof at trial and the crafting of
proper jury instructions. The Court will
deny the motion to dismiss but instruct the
jury that the government must prove be-
yond a reasonable doubt that Mr. Trie knew
of the DNC's reporting obligation before it
can find that he willfully caused the DNC to
make a false statement.[7]

### B. *Defendant's Motion 4, to Dismiss Counts 13–15 for Improper Venue*

■ Mr. Trie argues that the obstruction
of justice charges (Counts 13–15) cannot be

6. The Section 371 conspiracy count in *Curran*
was apparently also based on Sections 2(b) and
1001. *See United States v. Curran*, 20 F.3d at
562, 571. That is not the case here—at least
with respect to the first of the two categories of
conduct alleged in Count 1. The indictment
charges a conspiracy (1) to violate the mail and
wire fraud statutes (18 U.S.C. §§ 1341 and 1343)
and (2) to defraud the United States by impair-
ing, impeding and obstructing the lawful func-
tions of the FEC. *See* Indictment at 6. With
respect to the first category, the government nor-
mally would not have to prove that Mr. Trie
knew of the DNC's reporting requirement. To
the extent that the second category is based on
Mr. Trie's having caused the DNC to submit false
reports to the FEC, a variant of the aiding and
abetting theory, *see* Indictment at 8, ¶ 15.1, the
government would be required to prove the same
degree of intent as it does for the substantive
offense itself. *See United States v. Curran*, 20
F.3d at 571. Since Section 371 has generally
been held to create only one crime that may be
committed in one of two ways, *see United States
v. Minarik*, 875 F.2d 1186, 1193 (6th Cir.1989),
the different standards of proof required could
present a problem for the government at trial
depending upon the nature of its evidence of
impairing and impeding the lawful functions of
the FEC. The issue may have to be addressed at
trial and during discussions about jury instruc-
tions.

7. As with any other element that must be proved,
the government may rely on circumstantial as
well as direct evidence, and the jury will be
instructed that it is permitted to draw reasonable
inferences from the facts which have been prov-
en.

tried in the District of Columbia unless he acted within the District, and he asserts that the indictment fails to identify any acts he took in the District. While a trial court may dismiss an indictment for improper venue, Rule 12(b)(2), Fed.R.Crim.P.; *see United States v. Crop Growers Corp.*, 954 F.Supp. 335, 351–54 (D.D.C.1997), the failure to adequately allege the basis for venue generally should be addressed in the first instance not by dismissing the indictment but through a bill of particulars. *See United States v. Honneus*, 508 F.2d 566, 570 (1st Cir.1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Castellano*, 610 F.Supp. 1359, 1388 (S.D.N.Y.1985). The Court concludes that the District of Columbia is the wrong venue for the acts alleged in Count 14 and that count therefore must be dismissed, that venue is proper in the District of Columbia for Count 15, and that venue for Count 13 is not adequately alleged in the indictment and therefore is the proper subject for a bill of particulars.

### 1. Counts 13 and 15, Witness Tampering (18 U.S.C. § 1512)

18 U.S.C. § 1512(h) contains a special venue provision for Sections 1503 and 1512. It expressly provides that venue is proper "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." 18 U.S.C. § 1512(h). The government contends that venue is proper in the District of Columbia for Counts 13 and 15 because, while Mr. Trie himself took no acts in the District, the official proceedings at issue in these two counts took place in the District. Mr. Trie concedes that the official proceeding referenced in Count 15 was the federal grand jury proceeding in the District of Columbia but argues that the indictment does not specify the "official proceeding" in question for Count 13.

■ Although the official proceeding intended by Count 13 presumably is the federal grand jury referenced in Count 12, the indictment does not clearly state that the official proceeding alluded to in Count 13 is the federal grand jury in the District of Columbia. Furthermore, none of the introductory allegations in Count 12 (incorporated by reference in Counts 13, 14 and 15) clearly relate to the January 1997 offense date in Count 13. *See* Indictment at 30, 35.[8] Since the official proceeding applicable to Count 13 is not clearly identified, the Court will order the government to provide a bill of particulars on this issue. *See United States v. Honneus*, 508 F.2d at 570; *United States v. Castellano*, 610 F.Supp. at 1388.[9] On the basis of the government's representations that Count 13 does in fact relate to the grand jury in the District of Columbia, however, the Court will deny the motion to dismiss this count without prejudice. In the unlikely event that information in the bill of particulars indicates that the official proceeding in Count 13 did not take place in the District of Columbia, Mr. Trie may file a renewed motion to dismiss Count 13 for improper venue.

■ Mr. Trie also argues that the explicit venue provision in Section 1512(h) is unconstitutional because it provides for venue in a place other than the district where the crime was committed. *See* U.S. Const. Art. III, § 2 cl. 3; U.S. Const. amend. VI. In enacting Section 1512(h), Congress addressed the constitutional issue and concluded that the right provided by the Constitution to a trial in the district where the offense was committed was preserved because the statute merely established that "an obstruction of justice is 'committed' where the impact of the obstruction is felt." 134 Cong. Rec. 32,701 (1988) (statement by Sen. Biden). The Congress enacted the venue provision to address a split in the circuits concerning whether venue lies only in the district where the defendant took actions to obstruct justice or also in the district

---

8. By contrast, the June 27, 1997 date on which the Count 15 witness tampering allegedly occurred relates directly to the June 25, 1997 date on which it is alleged that the grand jury in the District of Columbia issued a grand jury subpoena to an employee of Mr. Trie. *See* Indictment at 37 and 30, ¶ 5.

9. The bill of particulars is addressed in more detail in the discussion of defendant's motion 8 (for a Bill of Particulars). *See infra* at 26.

where the proceeding sought to be obstructed is pending. *Id.; see also* H.R. Rep. 100–169 (1987), at 11–12.

 Although Congress may not constitutionally provide venue in a district where the crime was not committed, Congress may define where a crime is committed. *See* 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 302 at 201 (2d ed.1982). So long as the offense has some minimal contacts with the district, a crime can be committed in a district other than the location of the defendant's acts. *See, e.g., Burton v. United States,* 202 U.S. 344, 387–89, 26 S.Ct. 688, 50 L.Ed. 1057 (1906) (venue for federal mail fraud is available where fraudulent letter is received, not just where mailed); *United States v. Kilpatrick,* 458 F.2d 864, 868 (7th Cir.1972) (venue for aiding and abetting is available where the crime abetted was perpetrated even though the defendant acted elsewhere).

In this case, Congress has specified that prosecution for the crime of witness tampering may be brought either in the district where the official proceeding is pending or in the district in which the conduct constituting the alleged offense occurred. 18 U.S.C. § 1512(h). The fact that an "official proceeding" is taking place in a district and that there is an impact on the proceeding is sufficient. Congress' determination in this regard is an allowable exercise of its constitutional power, and the Court concludes that Section 1512(h) is constitutional. Venue for Counts 13 and 15 therefore is proper in the District of Columbia.

### 2. Count 14, Obstruction of Congressional Investigation (18 U.S.C. § 1505)

 Count 14 charges Mr. Trie with obstructing a Congressional proceeding in violation of 18 U.S.C. § 1505. Section 1505 does not contain a special venue provision similar to the one found in Section 1512, so the prosecution must be brought "in a district in which the offense was committed." Rule 18, Fed.R.Crim.P. The government concedes that Mr. Trie did not commit any of the acts alleged in Count 14 in the District of Columbia, but contends that venue is proper here under the continuing offense provision, 18 U.S.C. § 3237(a), which states that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

The case law in this Circuit establishes that obstruction of justice is not a continuing offense and that venue exists only in the district in which the acts constituting the offense took place. *See United States v. White,* 887 F.2d 267, 272 (D.C.Cir.1989) (bribery); *United States v. Swann,* 441 F.2d 1053, 1055 (D.C.Cir.1971) (obstruction of justice, Section 1503); *United States v. Moore,* 582 F.Supp. 1575, 1577 (D.D.C.1984) (witness tampering, Section 1512). While the Congress enacted the special venue provision expressly to overrule these cases with respect to Sections 1503 and 1512, it did not do so for Section 1505.[10] In this Circuit, therefore, the reasoning articulated in *White, Swann* and *Moore* controls the venue determination in Section 1505 cases: venue lies "only in a district in which the defendant committed unlawful acts and is not proper in a district where only the effects of the crime occur." *United States v. White,* 887 F.2d at 272. Section 1505 is not a "continuing offense." Since the grand jury in Count 14 has alleged no actions by Mr. Trie in the District of Columbia, venue is not proper in this district. Count 14 therefore will be dismissed.

### C. *Defendant's Motion 6, to Dismiss Counts 1–11 as Preempted by the FECA*

 Mr. Trie has moved to dismiss Counts 1–11 of the indictment because he claims that the specific criminal provisions of the Federal Election Campaign Act preempt the more general conspiracy, mail and wire fraud and false statements statutes under which he is charged in this case. While there may be some intuitive force to Mr.

10. The Court could easily conclude from the omission of a reference in Section 1512(h) to Section 1505 that Congress intended to restrict venue for such offenses to the district where the acts of obstruction took place.

Trie's argument that the government should not be permitted to prosecute him under general felony statutes if his conduct is specifically proscribed by the misdemeanor FECA statute, the argument ultimately fails.

Congress has provided federal prosecutors with a large arsenal of weapons with which to combat crime, and it is a well-accepted proposition that when a defendant's conduct violates more than one criminal statute, the prosecutor has wide discretion to charge (or to ask the grand jury to charge) the defendant with violating any of the applicable statutes. *See United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *Id.* at 124.[11] Absent evidence that Congress expressly intended to preempt a general statute with a more specific statutory scheme, the prosecutor has the discretion to decide how best to employ the battery of available criminal statutes. *United States v. Moore*, 423 U.S. 122, 138, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); *United States v. Oakar*, 924 F.Supp. at 244–45. Because Congress did not express an intent that the misdemeanor sanctions of FECA be a substitute for all other possible criminal sanctions, this motion will be denied. *See United States v. Hopkins*, 916 F.2d 207, 218 (5th Cir.1990); *United States v. Curran*, 20 F.3d at 566; *United States v. Oakar*, 924 F.Supp. at 245.

### III. MOTION TO STRIKE

Mr. Trie claims in Motion 7 that a number of objectives of the scheme to defraud alleged in Count 2 and incorporated by reference in Counts 3–8 are irrelevant and/or prejudicial. While the Court has authority under Rule 7(d) of the Federal Rules of Criminal Procedure to strike surplusage from an indictment, "[m]aterial that can fairly be described as 'surplus' may only ·be stricken if it is irrelevant and prejudicial."

*United States v. Oakar*, 111 F.3d at 157. *See United States v. Watt*, 911 F.Supp. 538, 554 (D.D.C.1995) (motion to strike should be granted when the allegations "are not relevant to the charge and are inflammatory and prejudicial"). Since it is the practice of this Court to provide a copy of the indictment to the jury in all cases, there is the possibility of prejudice to Mr. Trie from certain inflammatory statements in the indictment that are not essential to allegations respecting the crimes charged. Upon review of the statements at issue, the Court concludes that statements in paragraphs 4 and 11 on pages 18–20 of the indictment are irrelevant and prejudicial, and these statements therefore will be stricken. There is, however, no basis to strike the challenged statements in paragraphs 3, 5, 8, 9 and 10.·

Mr. Trie challenges the statement in paragraph 3 that he "sought access from high level government officials for the purpose of promoting [his] private business activities here and abroad." This statement has some relevance to the mail and wire fraud charges because it plausibly states a motive for seeking the property obtained through the alleged scheme (e.g., the "special seating at DNC functions" and "complimentary tickets to DNC events" discussed in paragraph 7). The government is not precluded from including information in the indictment used "to place the defendant's actions in context and to establish the defendant's state of mind, intent and motives." *United States v. Weinberger*, Crim. No. 92–235, 1992 WL 294877, at *7 (D.D.C. Sept.29, 1992). The statement in paragraph 3 does not appear to have a significantly prejudicial or pejorative meaning. Similarly, the challenged statements in paragraphs 8 (how the contributions allegedly helped Mr. Trie maintain his positions on DNC committees and related entities) and 9 (the use allegedly made by Mr. Trie of those positions) appear to relate to the motive for and context of the alleged scheme, and Mr. Trie's claim of prejudice is overblown. The statements in these

---

**11.** A prosecutor's discretion is limited, of course, by the principle that he or she cannot use prosecutorial discretion to discriminate against a class of defendants. *See United States v. Oakar*, 924 F.Supp. at 245. Mr. Trie, however, does not contend that the prosecution used the felony statutes in this case to discriminate against a class of defendants, and he has presented no evidence to support such an argument.

three paragraphs are permissible and will not be stricken.

Mr. Trie also challenges the statement in paragraph 4 that he "purchased access to high level government officials." In contrast to the phrase "seeking access" in paragraph 3, this language is substantially more inflammatory and hence prejudicial. In addition, this allegation is of marginal, if any, relevance. Even if the government had proof that Mr. Trie obtained access to high level government officials through the alleged scheme, such proof would go to the success of Mr. Trie's alleged scheme rather than to his motive for or method of carrying out the scheme. The success of a scheme to defraud is irrelevant for purposes of prosecution of the scheme under the mail and wire fraud statutes. *United States v. Sensi*, 879 F.2d 888, 893 (D.C.Cir.1989). The Court finds this statement to be both irrelevant and prejudicial; it therefore will be stricken. *See United States v. Hubbard*, 474 F.Supp. 64, 83 (D.D.C.1979) (striking words that were "colorful ... prejudicial and unnecessarily loaded").

The Court is troubled by the prejudicial nature of the statement in paragraph 5 that Mr. Trie "channeled foreign money to the DNC," but the statement is directly relevant to the conduct charged in these counts. It is inappropriate to use potentially inflammatory language, such as the word "channeled," when not necessary. *See United States v. Espy*, 989 F.Supp. 17, 37 (D.D.C.1997) ("A more neutral term should be employed ... without altering the essential substance"), *aff'd in part, rev'd on other grounds*, 1998 WL 312146 (D.C.Cir. June 16, 1998); *United States v. Hubbard*, 474 F.Supp. at 83 ("colorful words ... improper where less colorful and more accurate words would suffice"). On the other hand, *relevant* language generally "should not be stricken even if it may be prejudicial." *See United States v. Weinberger*, 1992 WL 294877, at *7. The statement in paragraph 5 is relevant to the alleged scheme to defraud the DNC in light of the government's allegations that the statutes and regulations prohibited at least hard money contributions from foreign sources and that the DNC had a policy of not

accepting money from foreign sources. *See* Indictment at 5, ¶ 11. This statement therefore will not be stricken.

The statement in paragraph 10 that Mr. Trie "deprived the DNC of the right to control how its money is spent" is neither facially irrelevant nor prejudicial. While it is not clear whether the government will be able to prove this allegation at trial or whether the legal theory to which it relates is applicable in the context of this case, *compare United States v. Zauber*, 857 F.2d 137, 147 (3d Cir.1988) ("loss of control" does not constitute property for purposes of mail fraud statute), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989), *with United States v. Madeoy*, 912 F.2d 1486, 1492 (D.C.Cir.1990) ("the right to control how its money is spent" is a property interest for purposes of mail fraud statute), *cert. denied*, 498 U.S. 1105, 111 S.Ct. 1008, 112 L.Ed.2d 1091 (1991), questions concerning the legal adequacy and sufficiency of proof of allegations are matters to be addressed during trial, not through a motion to strike surplusage. *See United States v. Oakar*, 111 F.3d at 157. This statement will not be stricken.

Finally, the statement in paragraph 11 that Mr. Trie "caused the DNC to file false campaign finance reports with the FEC" is irrelevant to the mail and wire fraud counts. While this allegation goes to the heart of the conspiracy to defraud the United States charged in Count 1 and the false statements charged in Counts 9–11, it is completely irrelevant to the scheme to defraud the DNC alleged in Counts 2–8. Since "[e]ach count in an indictment is regarded as if it was a separate indictment" and must "stand on its own," *United States v. Fulcher*, 626 F.2d 985, 988 (D.C.Cir.), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980), the fact that this conduct is relevant to Counts 1 and 9–11 does not matter in evaluating its relevance here. The paragraph also is prejudicial, since it suggests the inclusion of offenses which are separately charged by the government under Counts 1 and 9–11. *See United States v. Weinberger*, 1992 WL 294877, at *7 ("Language that serves no purpose and encourages a jury to draw infer-

ences that a defendant was involved in collateral activities irrelevant to the [count] may be stricken"); *United States v. Hubbard,* 474 F.Supp. at 83 (striking references to other offenses). This paragraph therefore is both irrelevant and prejudicial and will be stricken from the indictment.

## IV. BILL OF PARTICULARS, DISCOVERY AND BRADY

### A. Defendant's Motion 8, for a Bill of Particulars

Mr. Trie requests a bill of particulars as to: (1) the particular false statements alleged under Counts 9–11; (2) the identities of unnamed co-conspirators; (3) the identification of the property sought under the alleged mail/wire fraud scheme in Counts 2–8; (4) the basis for venue in the District of Columbia for the obstruction charges, Counts 13–15; and (5) the overt acts in furtherance of the alleged conspiracies (Counts 1 and 12) not already listed in the indictment, including the contributions that the government contends were fraudulent or improper. The Court finds that Mr. Trie is entitled to a bill of particulars as to many of the items he has requested.

"Under [Rule 7(f) of] the Federal Rules of Criminal Procedure, it is within the sound discretion of the court to determine whether a bill of particulars should be provided," and the Court should grant such motions when "necessary to prevent unfair surprise at trial." *United States v. Espy,* 989 F.Supp. at 34. The Court must strike a "prudent balance" between the legitimate interests of the government and the defendant. *United States v. MacFarlane,* 759 F.Supp. 1163, 1169 (W.D.Pa.1991). A bill of particulars is especially appropriate in this case because portions of the indictment are difficult to follow. Counts 9–11, the false state-

ments counts, are particularly enigmatic and, without further elucidation, Mr. Trie will be unable to effectively prepare his defense.

Mr. Trie first requests that the government be required to identify the particular statements alleged to be false (and what about them is false), as well as the specific contributions alleged to be falsely reported. The government maintains that the requested information need not be provided in a bill of particulars because it has provided Mr. Trie with 45 pages of excerpts in which it represents that all the false statements at issue are contained.[12] The problem is that these 45 pages contain 175 names along with a variety of information about each person or entity listed. The government contends that with due diligence Mr. Trie can readily identify which of the 175 names and what part of the related information constitute the actual false statements. This argument fails.

Not only does the government's position presume that the defendant knows what the government alleges that he did and with whom he dealt and therefore has all the information he needs, a premise inconsistent with the presumption of innocence, but it smacks of gamesmanship. A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information. *See United States v. Rogers,* 617 F.Supp. 1024, 1029 (D.Colo. 1985) (general allegations of false statements not sufficient); *United States v. Clifford,* 426 F.Supp. 696, 703 n. 4 (E.D.N.Y.1976) (in a false statements case, "[t]he starting point for everything is the statement"). The gov-

---

12. The government also contends that much of the requested bill of particulars, including details of the alleged false statements, is not necessary because of the open file discovery that has been provided to Mr. Trie. The open file discovery, amounting to making available for inspection at a central location approximately 1.9 million documents, is no substitute for adequate specification of the crimes with which he is charged. *See United States v. Bortnovsky,* 820 F.2d 572, 575

(2d Cir.1987) (requiring bill of particulars when government provided 4,000 documents and information concerning twelve burglaries that did not identify which four of the twelve were related to the charged offense); *United States v. Upton,* 856 F.Supp. 727, 753 (E.D.N.Y.1994) (government must specifically identify allegedly falsified documents "buried in thousands of documents already produced").

ernment must provide information as to exactly what the false statements are, what about them is false, who made them, and how Mr. Trie caused them to be made.

■ Mr. Trie has also requested the names of the unindicted co-conspirators not already identified in the indictment. The government has stated that it intends to release these names two months before trial, but it has refused to provide them earlier because it asserts that it is concerned about witness tampering. A number of factors support Mr. Trie's immediate need for the names: (1) some of the alleged co-conspirators may have dealt only with Mr. Pan, *see* Indictment at 16, ¶¶ 48–51, and Mr. Trie may have no way of identifying those persons; (2) the alleged conspiracies lasted a long time—approximately three and a half years, *see* Indictment at 6 and 31; and (3) there are a large number of alleged co-conspirators.[13] The Court concludes that the requested disclosure is necessary to allow Mr. Trie to adequately prepare for trial and that he is entitled to immediate disclosure of the names. *See United States v. Oakar*, 924 F.Supp. at 246; *United States v. Hubbard*, 474 F.Supp. at 82. Furthermore, the government is required to provide the names of all alleged co-conspirators regardless of whether they will be called as witnesses at trial. *See United States v. Resko*, 3 F.3d 684, 696 (3rd Cir.1993) (defendant may be held liable for acts by all co-conspirators even when he "did not know all of the details or goals of the conspiracy").[14]

■ Mr. Trie also requests specific details about the property that he allegedly obtained from the DNC in connection with the alleged scheme to defraud in Counts 2–8. The indictment alleges generally that he received benefits from the DNC "including, but not limited to, special seating at DNC func-

tions, complimentary tickets to DNC events, membership in DNC committees and related entities, including the Trustee Program, the Democratic Business Leadership Forum and the DNC Finance Board of Directors, invitations to meetings and other events where White House personnel, including the President and Vice President of the United States, were in attendance, and administrative support of DNC employees." Indictment at 19, ¶ 7. Prosecution of the scheme logically requires demonstrating that the property allegedly obtained by Mr. Trie was provided in return for the fraudulent contributions that he allegedly made to the DNC. A potential avenue of defense therefore would be to show that some or all of the property that was allegedly fraudulently obtained by Mr. Trie was in fact legitimately obtained. Preparation of such a defense requires that Mr. Trie know sufficiently specific information concerning the property allegedly obtained to adequately identify it, so that he can demonstrate either that he never obtained it or that he obtained it legitimately and not as a result of fraudulent contributions.

The Court concludes that the information supplied in the indictment is insufficient to allow Mr. Trie to adequately prepare for trial. The government therefore is required to identify, for those items upon which it intends to rely at trial, the specific DNC events and functions (by date) for which Mr. Trie was provided special seating and complimentary tickets, any DNC committees and related entities of which Mr. Trie was a member other than those specifically listed in the indictment and any meetings and other events (by date) to which Mr. Trie was invited where White House personnel were in attendance.

Mr. Trie next requests that the government specify the basis for venue in the District of Columbia for the obstruction charges,

---

13. The names of eight alleged co-conspirators have already been disclosed to Mr. Trie. Motion 8, Ex. A at 1. At the motions hearing, the government indicated that there are approximately ten additional alleged co-conspirators whose names have not yet been disclosed.

14. While the government points to the fact that Mr. Trie has been charged in the same indictment with witness tampering to support its asser-

tion that Mr. Trie has a "propensity to contact persons who have information about his illegal conduct," *see* Government's Consolidated Response at 69, the government has provided no other evidence that Mr. Trie will attempt to tamper with the potential testimony of these persons. In the absence of such evidence, the Court finds that he is entitled to the names of all alleged co-conspirators.

Counts 13–15. As discussed *supra* at 18–19, Count 14 will be dismissed for improper venue, and the Court has concluded that the indictment sufficiently identifies an adequate basis for venue in Count 15. Count 13, however, does not adequately allege that the official proceeding which provides a basis for venue took place in the District. *See* Indictment at 35. A bill of particulars therefore is appropriate. *See United States v. Castellano*, 610 F.Supp. at 1388. It appears to be a fair inference that the grand jury understood the count to refer to the grand jury proceedings in the District of Columbia, but the Court concludes that Mr. Trie is entitled to clarification by way of a bill of particulars.

■ Finally, Mr. Trie requests information concerning all the overt acts not already specified in the indictment in support of the conspiracies alleged in Counts 1 and 12 which the government intends to prove at trial. This request is too broad, as Mr. Trie's counsel seemed to acknowledge at oral argument. To require the government to identify all alleged overt acts (many of which may be innocent in themselves or may be incidental meetings, conversations or phone calls) in furtherance of the alleged conspiracies would be a heavy burden indeed and not essential to the preparation of a defense. It does seem, however, that in order to adequately prepare his defense, Mr. Trie is entitled to be advised of the particular contributions and financial transactions not already identified in the indictment upon which the government intends to rely at trial. The Court concludes that this information is necessary to enable Mr. Trie to adequately prepare for trial. The government therefore is required to provide this information in a bill of particulars. *See United States v. Rogers*, 617 F.Supp. at 1029 (overt acts in furtherance of conspiracy to be provided in bill of particulars); *United States v. Hubbard*, 474 F.Supp. at 81 (same); *United States v. Ahmad*, 53 F.R.D. 194, 201 (M.D.Pa.1971) (same); *United States v. Pilnick*, 267 F.Supp. 791, 801 (S.D.N.Y.1967) (same); *United States v. Covelli*, 210 F.Supp. 589, 590 (N.D.Ill.1962) (same).

The government has expressed a legitimate concern that once it provides a bill of particulars it will be limited at trial to proof within the area of the bill, *see United States v. Slaughter*, 89 F.Supp. 205, 207 (D.D.C. 1950), and that any conviction could be jeopardized on appeal if the defendant is prejudiced by a variance between the proof offered at trial and the bill of particulars. *See Jackson v. United States*, 359 F.2d 260, 263 n. 1 (D.C.Cir.), *cert. denied*, 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966). The Court's intent is not to strictly limit the government's proof or require it to disclose its evidence, but only to allow Mr. Trie the opportunity to adequately prepare his defense and not be surprised at trial. If the government discovers additional information related to these areas after providing Mr. Trie with the bill of particulars required by this Opinion, it may supplement its bill of particulars to include the new information.

### B. *Defendant's Motion 9, to Compel Discovery and Disclosure of Exculpatory Information*

Mr. Trie has moved to compel several different categories of discovery. Based on the representations of counsel at the hearing, the Court will defer ruling on the majority of Mr. Trie's discovery requests and on the government's motion for reciprocal discovery to give the parties an opportunity to resolve their differences. The Court will address Mr. Trie's request for *Brady* material.

■ Under the standard articulated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government must disclose any evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment. As an initial matter, it is important to set out several basic propositions of *Brady* jurisprudence. First, "favorable evidence" for purposes of *Brady* encompasses both evidence that is exculpatory and evidence that could be used to impeach a government witness. *United States v. Bagley*, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Second, the existence of a duty to disclose witness statements at trial pursuant to the Jencks Act, 18 U.S.C. § 3500, does not eviscerate the government's *Brady* obligation to disclose witness statements well in advance of trial if those statements also fall under *Brady*. *See United States v. Tarantino*, 846

F.2d 1384, 1414 n. 11 (D.C.Cir.), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). This is important because the government is required to disclose *Brady* material in sufficient time for the defendant to "use the favorable material effectively in the preparation and presentation of its case," *United States v. Pollack,* 534 F.2d 964, 973 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976), while Jencks material is not required to be disclosed until after the witness has testified. Finally, it is important to note that courts in this jurisdiction look with disfavor on narrow readings of the government's *Brady* obligations; it simply is insufficient for the government to offer "niggling excuses" for its failure to provide potentially exculpatory evidence to the defendant, and it does so at its peril. *See United States v. Paxson,* 861 F.2d 730, 737 (D.C.Cir. 1988).

▇▇▇ At the same time, however, the government is not required to "deliver [its] entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley,* 473 U.S. at 675, 105 S.Ct. 3375. Moreover, it is the government's responsibility in the first instance to determine whether information in its possession is *Brady* material. While it generally is not the court's role to "referee . . . disagreements about materiality and supervise the exchange of information," *United States v. McVeigh,* 954 F.Supp. 1441, 1451 (D.Colo.1997), the government acts at its own risk when it withholds even arguably favorable evidence. Because the parties appear fundamentally to disagree about whether certain categories of information constitute *Brady* material, the Court will address the broader issues raised by Mr. Trie's requests and delineate some parameters of the government's obligation.

### 1. Internal Memoranda

▇▇ Mr. Trie first requests all non-privileged internal Department of Justice and FEC documents that indicate that "soft money" is not subject to the limitations and restrictions set forth in FECA.[15] Mr. Trie maintains that this information may be exculpatory with respect to Counts 9–11 (the false statements counts). Mr. Trie argues that in order to obtain convictions on these counts, the government must prove that he knew that his conduct violated FECA and that to the extent that internal DOJ or FEC documents indicate that FECA does not cover soft money, such evidence would negate the government's argument that he knew his conduct was unlawful. Mr. Trie apparently misunderstands the government's burden under *Curran;* in order to obtain a conviction on the false statements counts at trial, the government must prove that Mr. Trie knew that the DNC was required to report the contributions at issue to the FEC. *See supra* at 14–16; *United States v. Curran,* 20 F.3d at 569. At most, internal FEC or DOJ memoranda stating that FECA does not apply to soft money would enable Mr. Trie to prove at trial that the government is hopelessly internally conflicted regarding whether FECA applies to soft money (or that the DOJ and the FEC are of the opinion that FECA in fact does not apply to soft money). Such a showing, however, would have no relevance to the issue of whether Mr. Trie "willfully" caused the DNC to file false statements with the FEC.[16] Because these documents are irrelevant to the issues in Counts 9–11, they are neither exculpatory nor material for purposes of those counts.

▇▇▇ Mr. Trie also argues that the internal memoranda may be exculpatory with respect to the charge in Count 1 (conspiracy). To the extent that the government at trial intends to rely on a theory that Mr. Trie

---

**15.** From Mr. Trie's motion, it is unclear whether he is seeking internal documents indicating that soft money is *not* covered by FECA, internal documents indicating that soft money *is* covered by FECA or both. *Compare* Defendant's Motion No. 9 at 6 Subheading IIA *with* Defendant's Motion No. 9 at 6 ¶ 1. To the extent that Mr. Trie seeks internal documents indicating that soft money is covered by FECA, such documents would be inculpatory and are not *Brady* material. The Court's analysis therefore focuses on internal documents indicating that FECA does not apply to soft money contributions.

**16.** Mr. Trie does not dispute that FEC *regulations* require the DNC to report both hard and soft money contributions. *See* 11 C.F.R. § 104.8(e).

conspired to impair or impede the FEC by arranging soft money contributions that violated 2 U.S.C. § 441e as opposed to the FEC regulations, DOJ or FEC memoranda indicating that Section 441e does not apply to soft money contributions would be exculpatory and material. If, therefore, the government intends to rely on such a theory, it must disclose any internal documents within its possession to Mr. Trie. *See United States v. Brooks,* 966 F.2d 1500, 1502 (D.C.Cir.1992) (government's *Brady* obligation extends to files in possession of agencies other than prosecutor's office).[17] If, however, the government does not intend to pursue such a theory, the requested internal memoranda are not sufficiently material to compel disclosure under *Brady. See United States v. Poindexter,* 727 F.Supp. 1470, 1473 (D.D.C. 1989) (denying motion to compel documents of "tangential relevance . . . given the potential burdensomeness to the government of producing the documents").[18]

### 2. Democratic National Committee's Knowledge of Fraudulent Contributions

■ Counts 2–8 of the indictment charge Mr. Trie with using the mails and wires in a scheme to defraud the Democratic National Committee. Mr. Trie seeks disclosure of evidence that might show that the DNC knowingly accepted illegal contributions and therefore was not a victim. *See* Defendant's Motion No 9, Exh. B (Discovery Requests) ¶¶ 2, 7, 19–34, 37–40.

To the extent that the government has any credible information indicating that DNC officials knew that the specific contributions at issue in this case were illegal or fraudulent, such information certainly is *Brady* material and should be disclosed to Mr. Trie. For instance, the information requested in Paragraph 34 of Mr. Trie's Discovery Request, Defendant's Motion, Exh. B, specifically relates to a fundraising dinner which the indictment alleges that Mr. Trie attended, and it therefore falls within the government's *Brady* obligation. If there are specific contributions not set forth in the indictment on which the government intends to rely, the government is obligated to identify them in a bill of particulars, *see supra* at 23, and it therefore easily will be able to determine the scope of its *Brady* obligations with respect to the DNC's knowledge relating to any of these contributions once it has provided the bill of particulars.

Similarly, if the government has specific evidence that the DNC has engaged in a pattern of knowingly accepting illegal contributions similar to the ones alleged here, that evidence would be exculpatory and material because it would indicate that the alleged victim identified in counts 2–8 is not a victim at all. Some of Mr. Trie's discovery requests relate to information that arguably could establish such a pattern. For instance, the information sought in Paragraphs 2, 21, 23, 24, 30 and 31 of Mr. Trie's Discovery Request, Defendant's Motion, Exh. B, all relate to the DNC's knowing acceptance of contributions similar to those allegedly made by Mr. Trie as part of the scheme to defraud. To the extent that the government has concrete information responsive to those requests, it therefore must disclose it under *Brady.*[19]

■ The remaining requests present more difficult issues. For instance, some of the requested information has no connection to the DNC's knowledge and relates only to irrelevant issues such as whether the DNC in fact accepted (whether knowingly or unknowingly) contributions that later proved to be

---

17. The Congress is not an "agency," and the DOJ has no obligation under *Brady* to disclose information in the possession of Congress that is not also in the possession of the DOJ or the FEC.

18. Given the ambiguity concerning whether Section 441e applies to soft money contributions, Mr. Trie has argued that as a matter of law the government cannot rely on this theory. Defendant's Motion 1A. The Court has reserved ruling on this motion.

19. The government argues that granting Mr. Trie's motion to compel would require the government to disclose information that is merely opinion or speculation. If the information is so speculative that it is not material, however, the government is not required to disclose it. It is the government's responsibility in the first instance to determine what is material. *See United States v. Paxson,* 861 F.2d at 737.

illegal and whether foreign nationals or non-English speaking foreign nationals attended DNC events. *See* ¶¶ 20, 22, 37, 38 of Mr. Trie's Discovery Request, Defendant's Motion, Exh. B. The Court will not compel production of this information, and the government will have to determine whether any of the requested information constitutes *Brady* material.[20]

### 3. Witness Statements

■ Mr. Trie seeks disclosure of "all witness statements (including FBI 302 reports) of witnesses that contain exculpatory impeachment evidence." Defendant's Motion 9 at 14. To the extent that Mr. Trie seeks all potentially inconsistent witness statements from all of the government's witnesses, he is not entitled to those under *Brady. See United States v. Tarantino*, 846 F.2d at 1416.[21] The government's *Brady* obligation extends only to *material* impeachment evidence, and potentially inconsistent witness statements from minor or incidental government witnesses therefore do not fall within the *Brady* requirement.

■ Mr. Trie also is not entitled to the notes and records upon which the FBI 302 reports of witness statements were based. While the government in the *Poindexter* case was compelled to produce such notes and records, the decision in that case involved the production of notes and records of interviews with the defendant himself as required by Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure, rather than the notes and records of witness interviews of the type that Mr. Trie seeks. *See United States v. Poindexter*, 727 F.Supp. at 1483.

■ To the extent that witness statements of key government witnesses are exculpatory or impeaching, however, they constitute *Brady* material, and the government has an obligation to disclose those statements. *See United States v. Tarantino*, 846

F.2d at 1414 n. 11. The government's *Brady* obligations "are not modified merely because they happen to arise in the context of witness statements." *United States v. Poindexter*, 727 F.Supp. at 1484. The government argues that it is sufficient for it to inform Mr. Trie that a certain witness may have exculpatory information and that it is not required to disclose the actual statement. While this argument may have some force with respect to a witness whose exculpatory statement could be discovered by the defendant if he interviewed her, *see United States v. Blackley*, 986 F.Supp. at 604–05, it is inapplicable to a situation in which a defendant probably could not elicit the potentially exculpatory information in an interview. For instance, if a witness initially indicates that the defendant did not engage in criminal activity but then changes her position to state that he did, she likely would not reveal her earlier position to the defendant in the course of an interview; yet the report of the first interview would be quintessential *Brady* material.

■ Within the parameters outlined above, the government must disclose all material evidence in its possession that in its best judgment is favorable to the defendant, bearing in mind that it has the "affirmative duty to resolve doubtful questions in favor of disclosure," and that "if the sword of Damocles is hanging over the head of one of the two parties, it is hanging over the head of the [government]." *United States v. Blackley*, 986 F.Supp. at 607 (internal quotations omitted).

\*　\*　\*　\*　\*　\*

Finally, Mr. Trie has requested leave to file additional motions if the disclosure of further information raise additional issues. *See* Defendant's Motion 10, for Leave to File Additional Pre-Trial Motions. The government has indicated that it will not oppose filing of any legitimate additional motions which Mr. Trie could not reasonably have

**20.** The government argues that some of the information sought by Mr. Trie is known to Mr. Trie and therefore is not *Brady* material. While the government is correct that it is not obligated to disclose information if Mr. Trie knows both of the evidence *and* of the exculpatory nature of that evidence, *see United States v. Derr*, 990 F.2d 1330, 1335 (D.C.Cir.1993), the government proceeds at its own peril in assuming that Mr. Trie knows about a given piece of evidence.

**21.** Mr. Trie is entitled to these statements under the Jencks Act if the witness testifies at trial. *See* 18 U.S.C. § 3500.

filed by the May 4, 1998 deadline. Because the need to file additional motions has not yet arisen, the issue is not properly before the Court. If and when the need for additional pre-trial motions arises, Mr. Trie may move for leave to file the motions at that time.

*ORDER*

The trial in this case is scheduled to begin on October 7, 1998 and is estimated to last approximately three weeks. Lead counsel for Mr. Trie, Reid W. Weingarten, Esq., is also required to appear before Judge Urbina on October 1, 1998 to begin trial in the *Espy* case, a trial which is estimated to last approximately three months. Mr. Weingarten has advised the Court that if neither this Court nor Judge Urbina will modify the schedule and he must choose between his two clients, he reluctantly will choose Mr. Espy. The government has moved to maintain the current trial date in this case. While counsel for Mr. Trie has orally responded to that motion, the Court thinks it appropriate before finally deciding the matter to provide Mr. Trie and his counsel the opportunity to submit a written response to the motion, including, if they so desire, an affidavit from Mr. Trie. If in his response counsel proposes any change in the current trial date, he must propose alternative dates that are now and will remain available for Mr. Weingarten. The Court would consider a September trial in this case. Accordingly, it is hereby

ORDERED that counsel for defendant shall respond in writing to the government's motion to maintain the trial date on or before July 24, 1998. The government shall file any reply on or before July 30, 1998. Both parties shall hand-deliver courtesy copies to Chambers. If a hearing on the matter is necessary, it will take place on August 4, 1998 at 9:00 a.m., and Mr. Trie will be required to be present.

SO ORDERED.